## JAMES GORDON et al., Appellants, v. ALLEN PARK et al.

### Division Two, March 19, 1907.

1. **EJECTMENT: Adverse Possession: Peremptory Instruction.** Where the answer in ejectment is a general denial and a plea of limitation, and there is some evidence tending to show that defendants and those under whom they claim title to the coal under the land had been in the adverse possession of the coal mine for more than ten consecutive years before the commencement of the suit, the court should not take the case from the jury by giving a peremptory instruction for plaintiff.

2. ——: ——: **Coal Mine: Segregation: Limitation.** The owner of land in 1859 conveyed an undivided one-half interest in a coal mine to plaintiffs' ancestor. *Held,* that that conveyance operated as a severance, by grant, of the coal from the land overlying it, and the mere possession thereafter of the surface did not carry with it, or extend, such possession to the coal. So that plaintiffs, in whom was the paper title to the coal sued for, were entitled to recover the coal, unless the defendants and those under whom they claim title had been in the actual, open, notorious, exclusive, adverse and hostile possession of the coal mine as such for more than ten years before the institution of the suit.

3. ——: ——: **Coal in Place: Limitation.** Coal in place is land when severed by grant from the surface, and in this State actions in ejectment therefor are barred in ten years when the possession has been actual, adverse, open, hostile, exclusive and continuous. And under the evidence in this case the adverse possession was not continuous, but broken, though from first to last it extended, by periods of three or four years at a time, over more than twenty years.

4. ——: ——: ——: ——: **Continuous Adverse Possession.** It is not necessary, in order for defendant's adverse possession to be a bar to plaintiff's paper title, that work in the coal mine should have been done every day or within the view of the public. But it is necessary that defendant should have continued to exercise acts of possession and ownership over the mine, such as keeping off trespassers, giving permission to persons to take coal therefrom, paying taxes thereon, mining the coal when practicable or advantageous, or leasing the mine to others, or such other acts from which plaintiff must have known or inferred that defendant was claiming the coal as his own.

5. ——: ——: ——: ——: **Instruction.** Instructions in ejectment for a coal mine severed by grant from the surface, which tell the jury that the defense of adverse possession is sustained if the defendant had ten years' adverse possession of "the property" described in the petition "and continually claimed to be owners of the land," are erroneous. The ownership or possession of the land is not the issue.

6. ——: **Death of Life Tenant: Assumed at Trial.** Where the case was tried on the theory that plaintiffs' mother who had a life estate in the property sued for was dead, it must be heard upon the same theory on appeal, whether or not there was any evidence showing her to be dead.

Appeal from Boone Circuit Court.—*Hon. A. H. Waller*, Judge.

REVERSED AND REMANDED.

*Webster Gordon* for appellants; *E. W. Hinton* of counsel.

(1) The court should have directed a verdict for plaintiffs because the surface and the underlying coal having been severed by grant, the surface owners' possession did not carry with it the possession of the coal, and there was no other evidence of continued adverse possession. Manning v. Coal Co., 181 Mo. 359; Cathie Coal Co. v. Lloyd, 176 Ill. 275; Caldwell v. Copeland, 37 Pa. St. 427; Armstrong v. Caldwell, 53 Pa. St. 284. (a) The foregoing cases settle the rule that after a severance by grant, possession of the surface is not possession of the underlying mineral and, therefore, no matter how long continued, nor under what claims, it can never work a disseizin. Before a claimant can obtain title to a thing by adverse possession, he must have had the possession; and a surface owner, merely by occupying his farm, has no more possession of another man's mine beneath it, than he has of an adjoining owner's land separated by a division fence. Barringer & Adams, Mining Law, pp. 568-9. (b) Discon-

nected operations, separated by periods of from six to twelve years' inactivity, when there was no possession of the mine independent of the surface, could not amount to adverse possession, because it lacked the essential elements of continuity, without which the acts amounted simply to trespasses. Armstrong v. Caldwell, 53 Pa. St. 284. The surface owner stands in no better position than a stranger asserting title to the mine. Railroad v. Baker, 183 Mo. 323; Brown v. Hartford, 173 Mo. 183. (2) The two instructions for defendants were grossly erroneous and misleading in telling the jury that the defense of adverse possession was made out if defendant had ten years' possession of the "property" described in the petition claiming the ownership of "said land." The jury could have understood nothing else but that the undisputed occupation of the land, under a general claim of ownership, gave title to the coal, whereas, in point of law, nothing short of continued possession of the coal under specific claim of title to it, could operate to defeat a distinct title acquired by grant. Caldwell v. Copeland, 37 Pa. St. 427; Armstrong v. Caldwell, 53 Pa. St. 284; Manning v. Coal Co., 181 Mo. 359.

*N. T. Gentry* for respondents.

(1) Plaintiffs cannot possibly recover. There was no proof whatever that the widow of George W. Gordon was dead, or, if dead, when she died. The law is well established that the plaintiff in an ejectment suit must allege and prove that he was entitled to the possession of the premises sued at the time of the institution of the suit. R. S. 1899, secs. 3053 and 3058; Ford v. French, 72 Mo. 252; Nalle v. Thompson, 173 Mo. 614; Tyler on Ejectment, 76. And our authorities also hold that the remainderman cannot institute a suit in ejectment, so long as the life tenant (in this instance the widow), is living. Talbott v. Hamill, 151 Mo. 292.

(2)   The authorities cited by appellants are not in point, as the evidence in the case at bar is so different from the evidence in said cases. In the case of Manning v. Coal Co., 181 Mo. 359, the plaintiff was endeavoring to have his title quieted by reason of having been in possession of the surface of the ground for many years, the coal thereunder having been severed by conveyance to the defendant's grantor. The concluding paragraph of the decision in that case, opinion by Judge Burgess, is as follows: "In the case at bar, there is no pretense that plaintiff was ever in possession of the coal strata underlying the land and independently of the possession of the surface, so that there was no adverse holding of it by him." Manning v. Coal Co., 181 Mo. 379. In the case at bar, the evidence showed that after the civil war, Wm. A. Park opened up this coal mine and had coal mined therefrom for a year or two; that Mr. Park not only claimed the land, but also the coal mine. The evidence further showed that after the death of Wm. A. Park, the curator of his son held possession of said mine, claimed the same and had coal mined therefrom whenever he could get miners. In other words, the evidence wholly fails to show any claim or acts of ownership on the part of appellants; but that the defendant Park, his curator and his father have been in possession of said coal mine and exercising acts of ownership over the same, to the exclusion of all others, ever since a year or two before the death of Wm. A. Park, which the undisputed evidence showed occurred on May 20, 1874. These acts were as open, visible, adverse, notorious, continued and uninterrupted as it is possible to have them in case the real estate claimed is an underground mine. Hence, the requirements on that subject in the case of Brown v. Hartford, 173 Mo. 191, cited by appellants, have been fully complied with. It is not necessary that the work in a mine shall continue every

day, nor every hour in the day, in order to give defendants the benefit of the Statute of Limitations. Neither is it necessary that the work done in a coal mine shall be done within view of the public, for that would be an impossibility. The peculiar wording of the opinion in the case of Brown v. Hartford, supra, must be considered, if it can be applicable at all, in connection with the peculiar kind of work that can be done in a coal mine. In no mine can the work be continuous, nor open, nor uninterrupted for ten years. Few, if any, coal mines in Missouri will "hold out" and be workable for a period of ten years. It has never been held that it was necessary for the surface owner to work the surface of the ground every day, or indeed every year, for a period of ten years, in order to acquire title by adverse possession. But public possession, accompanied by claim of title and the usual acts of ownership for the statutory period, will give such claimant title by adverse possession. Not only did Wm. A. Park open and operate said coal mine for a year or two prior to his death and sell coal therefrom, but the curator for his son continued in such operation at all times when he was able to get coal miners; and the royalties received by said curator were entered as charges on his accounts filed with his settlements in the probate court. In view of the claim of said curator, his employment of miners, his collection of the royalty and the publicity of the probate settlement records, when taken in connection with the ownership of the surface, the fence that Wm. A. Park and the curator for his son maintained around the entrance to said mine for a period of twenty-five years, the continued maintenance of said fence by defendant Park for ten years more, and the total failure of any other person to assert any claim or title to said mine, it will be seen that the defense of adverse possession was sustained by substantial evidence. (3) Appellants' criti-

cism of respondents'instruction is without merit. Even
if the last word in said instruction was a verbal error,
the jury could not possibly have been misled thereby.
When said instruction is read and considered all to-
gether, it properly told the jury the law on the subject
of the Statutes of Limitations. But respectable au-
thorities hold that mines are land. Catlin v. Lloyd, 176
Ill. 282; Caldwell v. Copeland, 37 Pa. St. 431.

BURGESS, J.—This is an action in ejectment, in-
stituted by plaintiff in the circuit court of Boone
county, to recover possession of an undivided two-
tenths of all the coal underlying certain land in said
county owned by defendant Allen Park, which land
and a coal mine thereon he had leased to defendant
George Melloway. The petition is in the usual form.
The defendants filed separate answers, that of defend-
ant Melloway being simply a general denial; but de-
fendant Park's answer, in addition to denying each
and every allegation in the petition, set up and pleaded
the Statute of Limitations.

The trial resulted in a verdict and judgment for
the defendants, from which judgment plaintiffs ap-
peal.

There is no dispute as to the ownership of the
land, but only as to the coal underlying the same.
Berkley Estes was the common source of title. It ap-
pears from the evidence that on February 25, 1859, he
conveyed to Boyle Gordon an undivided half interest
in the coal mine in controversy, reciting in the deed
that the other half had previously been conveyed to
John B. Gordon. By deed, dated March 5, 1859, Boyle
Gordon conveyed his undivided interest in the mine to
George W. Gordon, the father of the plaintiffs. This
deed was recorded in the recorder's office of Boone
county March 7, 1859. George W. Gordon died in 1860,
and by the terms of his will, which was probated July

24, 1860, all of his real and personal estate was given to his widow, Ann Eliza Gordon, during her lifetime, and at her death to her children, Irvin Gordon, Irene Gordon, Jennie Gordon, Webster Gordon and James Gordon, the two last named being the plaintiffs in this action. An inventory of all the real and personal estate of said George W. Gordon was made by the executors, Ann Eliza Gordon and James M. Gordon, but there was no mention in said inventory of any interest of the testator in said coal mine, nor was there any evidence that said George W. Gordon ever used or claimed any interest therein.

The land upon which the coal mine in question is situated was conveyed by Berkley Estes to his son-in-law, William A. Park, by deed executed June 1, 1868, which deed contained no reservation as to the said coal mine. William A. Park died on May 20, 1874, leaving a widow, a daughter and an infant son, the latter being Allen Park, defendant in this suit. By his last will and testament, William A. Park gave this land to his widow, during her lifetime, and to his children at her death. His widow died in 1875, and his daughter died intestate a few years later, never having married. Defendant Allen Park, being a child three years old at the time of his mother's death, was taken to the home of his uncle, William B. Estes. Mr. Estes qualified as executor of the estate of William A. Park, deceased, and also qualified as guardian and curator of defendant Allen Park, and acted as such guardian and curator until February, 1894. On December 27, 1893, defendant Allen Park became of age, having married a short time prior thereto, and moved to this land, living thereon till March 16, 1901, when he sold it to Sarah E. Hayes. Mrs. Hayes and her husband had this mine worked till they sold the place to defendant George Melloway, on February 2, 1903. The next day Melloway conveyed the land back to Allen Park. In neither

of the deeds of conveyance was there mention of any reservation as to the said coal mine. On the day of the last-named conveyance, defendant Park executed a mining lease to said Melloway authorizing him to mine on said land.

It would appear from the evidence that the coal mine in question had been worked only at intervals. Shortly prior to the Civil War George W. Gordon, plaintiffs' father, and John B. Gordon, the owner of the other half interest in the coal, did some mining on the land, and no further work was done until after 1868, when William A. Park, the purchaser of the land, and one C. H. Gordon, a son of John B. Gordon, operated the mine for two or three years. After the death of William A. Park, no mining appears to have been done until 1878, when William B. Estes, defendant Allen's curator, rented the mine and collected some eight dollars royalty on the coal mined.

During the years 1889, 1890 and 1891 there was considerable mining done on the land, the royalty collected by curator Estes amounting to about fifty dollars each year. There was no evidence that any more mining was done until 1901, when the mines were worked by Hayes, and the work was then discontinued until about a year before the institution of this suit.

The evidence showed that the land on which the coal mine in question is situated was fenced in by William A. Park, and that the fence was maintained by curator Estes, by defendant Park and by Mrs. Hayes respectively; that during all the time Wm. B. Estes acted as curator for defendant Park he claimed the coal mine as the property of his ward, and had the same worked at intervals, as stated. No demand was ever made by either one of the plaintiffs for possession of said coal mine, and no objection was ever made by either of them to the possession of same by the defendants, until the filing of this suit.

At the close of the evidence the plaintiffs asked the court to instruct the jury that, under the pleadings and the evidence, their verdict must be for the plaintiffs for the possession of two-tenths of all the coal under the surface of the land described in plaintiffs' petition, which the court refused to do, and plaintiffs duly excepted.

The court, then, at the instance of plaintiffs, and over the objection and exception of defendants, instructed the jury as follows:

"1.   The court instructs the jury as plaintiffs and defendant Allen Park claim title from and through Berkley Estes, deceased, to all the coal under the surface of the land described in plaintiffs' petition, it was sufficient for plaintiffs to show a derivative title from him to said coal, without proving his title further back.

"2.   The court instructs the jury that plaintiffs have proved a perfect paper title to two-tenths of all the coal under the surface of the land described in plaintiffs' petition, to-wit, all that part of the east half of the southwest quarter of section 16, township 48, and range 12, in Boone county, Missouri, north of the Columbia and Cedar Creek Gravel Road, back to Berkley Estes, deceased, and your finding and verdict must be for the plaintiffs for the undivided two-tenths of said coal, unless the jury believe from the evidence that defendants, or one of them, had had such possession of said coal as is hereinafter explained in the instructions given for plaintiff.

"3.   The court instructs the jury before they can find for the defendants, or either of them, on account of having possession of the said coal they must believe from the evidence that defendants, or one of them, or those under whom he or they claim title to said coal, has had the actual, exclusive, continued, peaceable and hostile possession of said coal for ten or more consecutive years prior to the institution of this suit.

"4. The court instructs the jury that the actual, exclusive, continued, peaceable and hostile possession of the surface of the land by the defendants, or either of them, described in the foregoing instructions, will not carry with it the possession of the coal under the surface of said land, and you should not find for the defendants, or either of them, on that account."

The court, at the request of defendants, and over the objection and exception of plaintiffs, gave the following instructions:

"1. If the jury believe from the evidence that the defendant Park and those under whom he claims ownership and title, have been in the peaceable, open, notorious, adverse, continued and exclusive possession of the property here in controversy, claiming said property for more than ten years prior to the institution of this suit, the verdict and judgment must be for the defendants.

"2. If the jury believes from the evidence that the defendants, and those under whom they claim title, have been constantly in the open, notorious, adverse, exclusive and continued possession of the property described in the petition, for the period of ten years prior to the institution of this suit, and that the defendants and those under whom they claim title have continually claimed to be the owners of said land during said ten years, then the jury must find for the defendants."

The answer was a general denial and a plea of the Statute of Limitations, and there being some evidence tending to show that the defendants, and those under whom they claim title to the coal, had been in the adverse possession thereof for more than ten consecutive years before the commencement of the suit, the court, therefore, did not err in refusing to take the case from the jury. [Benton v. Klein, 42 Mo. 97; Owens v. Rector, 44 Mo. 389.]

When Berkley Estes, on the 26th of February,

1859, conveyed an undivided one-half of the coal mine in question (having theretofore conveyed the other half to John B. Gordon), that operated as a severance, by grant, of the coal from the land overlying it, and, thereafter, the mere possession of the surface did not carry with it, or extend, such possession to the coal. [Caldwell v. Copeland, 37 Pa. St. 427; Armstrong v. Caldwell, 53 Pa. St. 284; Catlin Coal Co. v. Lloyd, 176 Ill. 275; Williams v. Gibson, 84 Ala. 228; Manning v. Coal Co., 181 Mo. 359.] So that, as the paper title to the coal sued for was in plaintiffs, they were entitled to recover, unless the defendants and those under whom they claim title had been in the actual, open, notorious, exclusive, adverse and hostile possession of the coal mine as such, independent of the possession of the surface, for more than ten years before the institution of this suit. "The surface owner setting up the statute must establish a possession of the mine, as such, independently of his possession of the surface. Such a possession must be actual, notorious, exclusive, continuous, peaceable, and hostile for the statutory period. And in these respects the surface owner is in no better position than a stranger. . . . Actual possession is taken by the opening of mines and carrying on of mining operations. That possession is continuous if the operations are continuous, or are carried on continuously at such seasons as the nature of the business and the customs of the country permit or require. A cessation of operations in accordance with the custom of the neighborhood, or from necessity occasioned by some natural agency, would not be an interruption of the possession. But there must be something evidencing possession in the interval which connects the operations when resumed with those which have gone before, and to distinguish such possession from a series of repeated acts of trespass." [Barringer and Adams on the Law of Mines and Mining, p. 569.] In the same

work, on page 568, it is said: "In some states and territories special limitations have been imposed by statutes for the recovery of mining property, but in the absence of such limitations such suits are governed by the general statutes relating to actions for the recovery of real estate." [Catlin Coal Co. v. Lloyd, supra.]

In this State actions of this character are barred in ten years (sec. 4262, R. S. 1899), when the possession has been actual, adverse, open, hostile, exclusive and continuous; and, within the meaning of this statute, coal in place is land when severed by grant from the surface, as in this case. But in the case at bar the possession by defendants and those under whom they claim does not appear to have been continuous for the period of ten successive years at any one time. Some time between his purchase of the land, in 1868, and his death, in 1874, defendant's father, William A. Park, and C. H. Gordon, a son of the owner of a half interest in the mine, operated it together for two or three years, after which it was not operated until 1878, when one Johnson, a tenant on the farm, got out a small quantity of coal, upon which he paid defendant Park's curator a royalty of about seven dollars. Then, after a lapse of several years, the mine was operated during part of the years 1889, 1890 and 1891. So that, according to the evidence, there were several breaks in the continuity of possession, and at no time from the time William A. Park and C. H. Gordon began operating the mine, between 1868 and 1874, was there ten successive years of actual, adverse, open, hostile, exclusive and continuous possession of the mine by defendants and those under whom they claim, before the commencement of this suit. [Brown v. Hartford, 173 Mo. 183.] It is true, as claimed by defendants, that the evidence fails to show any claim or acts of ownership on the part of the plaintiffs to the coal; but they owned the legal title and could not have made it any stronger by exercising

ownership over the coal; and in order to divest them of their title by adverse possession, such possession must have been continuous and adverse for the requisite number of years. It was not necessary, however, in order to give defendants the benefit of the Statute of Limitations, that work in the mine should have been done every day, or that such work by defendants should have been done within view of the public. "All the authorities agree that the acts of possession must be visible and continuous for the requisite period in order to create the bar. [Sedgwick and Wait on Trial of Title to Land, secs. 735, 737.] It is not required that an act of ownership should be done every day or month or at any definite intervals, but they should be of such frequency and character as would at all times apprise the owner 'that his seizin was interrupted and that his title may be endangered.' " [Goltermann v. Schiermeyer, 125 Mo. l. c. 302.] To prevent a break in the possession of those claiming possession of the mine, they should have continued to exercise acts of possession and ownership over it, as by keeping off trespassers, giving permission to persons to take coal therefrom, paying taxes thereon, mining the coal when practicable or advantageous, or leasing the mine to others, from all of which plaintiffs must have known or inferred that defendants were claiming the coal as their own.

Defendants' instructions are erroneous and misleading in that they told the jury that the defense of adverse possession was sustained if the defendants had ten years' adverse possession of the *property* described in the petition, "and continually claimed to be the owners of said *land,*" when the ownership or possession of the land was not in question.

Defendants contend that there was no proof that the widow of George W. Gordon was dead, or if dead, when she died, and that as she had a life estate in the

coal, the plaintiffs could not sue for possession thereof until after her death. But the case was tried upon the theory that Mrs. Gordon was dead at the time of the institution of the suit, and must be heard upon the same theory here. [Walker v. Owen, 79 Mo. 563; Benne v. Miller, 149 Mo. 228; Farrar v. Railroad, 162 Mo. 469.]

For the reasons indicated the judgment is reversed and the cause remanded, to be tried in accordance with this opinion.

All concur.