IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

## NASHVILLE, DECEMBER TERM, 1915.

L. H. NORTHCUT *et al. v.* LEWIS CHURCH *et al.* *

*(Nashville.* December Term, 1915.)

1. MINES AND MINERALS. Title. Adverse possession. By possession of surface.

Possession of the surface of land by one who has by his conveyance of the mineral interest severed the latter from the surface, is not a possession of the underlying severed mineral interest, nor does such possession inure to the owner of the mineral; distinct estates being created by the severance. (*Post, pp.* 546-553.)

Acts cited and construed: Acts 1819, ch. 28, sec. 1.

Cases cited and approved: Murray v. Allred, 100 Tenn., 100; Westmoreland & Cambria Natural Gas Co. v. De Witt, 130 Pa., 235; Louisville & N. R. Co. v. Massey, 136 Ala., 156;

---

*The question of possession of surface as possession of minerals within rule against conveyance of land held adversely, is discussed in a note in 35 L. R. A. (N. S.), 745. As to effect of parol transfer of possession as basis of tacking, see note in 35 L. R. A. (N. S.), 498.

Gordon v. Park, 202 Mo., 236; Catlin Coal Co. v. Lloyd, 180 Ill., 398; Kiser v. McLean, 67 W. Va., 294; Wallace v. Elm Grove Coal Co., 58 W. Va., 449; J. R. Crowe Coal & Min. Co. v. Atkinson, 85 Kan., 357; McBurney v. Coal & Coke Co., 121 Tenn., 275.

Code cited and construed: Sec. 4456 (S.).

2. MINES AND MINERALS. Title. Adverse possession. By possession of surface.

Acts of possession required for the surface and those for the minerals are different; the latter requiring some form of mining or activities directly related thereto. (*Post, pp.* 553-555.)

Cases cited and approved: Catlin Coal Co. v. Lloyd, 176 Ill., 275; Ames v. Ames, 160 Ill., 599; New Jersey Zinc Co. v. N. J. Franklinite Co., 13 N. J. Eq., 322; Gill v. Fletcher, 74 Ohio St., 295; Lillibridge v. Lackawana, etc., Co., 143 Pa., 293; Louisville, etc., R. Co. v. Massey, 136 Ala., 156; Manning v. Kansas, etc., Coal Co., 181 Mo., 359; Caldwell v. Copeland, 37 Pa., 427; Armstrong v. Caldwell, 53 Pa., 284; Huss v. Jacobs, 210 Pa., 145; Virginia Coal, etc., Co. v. Kelly, 93 Va., 332.

3. ADVERSE POSSESSION. Tacking. Privity.

Where the grantee of an adverse possessor takes possession, he may unite his subsequent possession with his grantor's prior possession to make out adverse possession for the seven-year period. (*Post, pp.* 555, 556.)

Case cited and approved: Finnegan v. Stineman, 5 Pa. Super. Ct., 124.

4. MINES AND MINERALS. Title. Adverse possession. Tacking.

Where the grantee of mineral rights of an adverse possessor takes immediate and appropriate possession thereof, he may unite his subsequent possession with his grantor's prior possession to make out statutory title by adverse possession. (*Post, pp.* 555, 556.)

5. COMMON LAW. Courts. Rules of decision. Decisions of other courts.

The courts of a State may refuse to follow even a concensus of authority in all other States, or a well-recognized rule of com-

mon law, on the ground that it is not suited to the genius of the State or is opposed to its public policy; the public policy of a State being shown by its statutes and decisions. (*Post, pp.* 556-558.)

Cases cited and approved:  Welcker v. Staples, 88 Tenn., 49; Ramsey v. Quillen, 73 Tenn., 184.

6. **MINES AND MINERALS.  Conveyance of legal rights.  Right of access incident.**

The grantor of minerals by implication of law conveys the right to obtain access to them through the surface, and against such purpose does not hold the surface adversely. (*Post, pp.* 558, 559.)

Acts cited and construed:  Acts 1819, ch. 28, sec. 1.

---

FROM GRUNDY.

---

Appeal from the Chancery Court of Grundy County —V. C. ALLEN, Chancellor.

ROBINSON & FANCHER, for appellants.

FULTS & SCHNOON and L. V. WOODLEE, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Complainants L. H. Northcut, and the heirs of H L. Raulston, deceased, claim the mineral interest in 177 acres of a tract of 200 acres, and the whole interest in twenty-three acres, the residue of the 200 acres. The defendants claim under one Francis Church to whom a grant of 5,000 acres of land was made in 1831. This grant included within its boundaries, but excluded from its operation, "100 acres belonging to one A. Higginbotham entered June 25, 1831, by No. 3083." The

complainants claim under one W. R. Nunnely, through a deed made by him to one J. M. Nunnely, and by the latter to complainant Northcut, and H. L. Raulston, the ancestor of the other complainants. W. R. Nunnely's deed describes the land conveyed therein, as made up partly of the above-mentioned Higginbotham tract, but the bill charges that the whole 200 acres lies within the Church grant. Assuming that the complainants are bound by the deed which they have filed, then it is impossible to say how much of the 200 acres lies within the Church grant, and how much within the Higginbotham entry. However, the complainants do not deraign their title either to the Church or the Higginbotham grant, if the latter ever procured a grant, on his entry, which is not shown. They trace title only to W. R. Nunnely, and it is not shown that he had any kind of title. An effort was made to prove that the land was sold for taxes due from Church, and that W. R. Nunnely had bought the land at tax sale, and received a tax deed, but this failed utterly. So, the complainants had no other recourse than to rely on the statute of limitations of seven years.

The facts applicable to this feature of the case are as follows:

The deed which W. R. Nunnely made to J. M. Nunnely, purporting to convey the 200 acres, was executed on the 24th day of July, 1884. The evidence shows that there were several settlements on the land, running back more than seven years prior to that deed, but no color of title is shown covering them, nor are the

bounds or descriptions of such settlements shown. All of these must therefore go for naught. It is also shown that J. M. Nunnely divided the land among his children, and put them in possession of parts of it, but the deeds are not exhibited, nor are the descriptions of the holdings of the children given. In view of this fact the defendants insist that since the burden of proof to make out a claim under the statute of limitations rests upon one who relies thereon, and that the evidence must be substantial and clear (*Coal & Iron Company* v. *Coppinger,* 95 Tenn., 526, 530, 32 S. W., 465), the complainants' case breaks down under the uncertainty thus created as to how long J. M. Nunnely, under whom they claim, in fact held possession of the land.

But passing this, we shall assume that inasmuch as no deeds appear as made by J. M. Nunnely to his children, their various holdings were under and for him, after he received his color of title on the 24th of July, 1884.

He did not hold this land, however, under his color of title for as much as seven years before he made his conveyance to the complainant Northcut, and H. L. Raulston. This latter deed was made on the 7th of June, 1890, showing an interval of less than six years.

Perhaps we might stop at this point and refuse further to consider complainants' claim under the statute of limitations, on the ground that it does not appear that all of the land sued for, or how much of it, was land that had been granted by this State or the State of North Carolina; the Act of 1819, chapter 28,

135 Tenn.—35

section 1, requiring such fact to be shown as a necessary groundwork on which to erect a title acquired under the statute of limitations (Sh. Code, section 4456), but we shall waive this question, and proceed to determine the controversy on the point chiefly argued by counsel, at the bar of the court, and in the briefs and written arguments filed.

That question arises on the fact that J. M. Nunnely, had held the land under color of title less than seven years when he conveyed the mineral interest in the 177 acres to Northcut and Raulston, and the further fact that neither vendor nor vendees exercised any acts of ownership appropriate to indicate possession of such mineral interest. The contention of the complainants is that J. M. Nunnely continued to hold possession of the surface for a period longer than seven years from the date of his deed from W. R. Nunnely, and that this possession inured to the benefit of the persons to whom he had conveyed the mineral interest, and that thus seven years' adverse possession was made out for them. Adding his possession of the surface before his conveyance to Northcut and Raulston and his possession after that time, Nunnely had, prior to the bringing of this action, held the surface of the land more than seven years; but there is no evidence that any mining was attempted, or any effort made to take possession of the minerals as such. So, we have the question: Is the possession of the surface of land by one who has by his conveyance of the mineral interest severed the latter from the surface a possession of

the underlying severed mineral interest, and does such possession inure to the owner of the mineral?

The negative of this question is so well settled in other jurisdictions that we should have no hesitancy in answering in the same manner but for the fact that there is a conflict on the subject in our own decisions.

The first case is *Murray* v. *Allred,* 100 Tenn., 100, 43 S. W., 355, 39 L. R. A., 249, 66 Am. St. Rep., 740. The facts of that case were viz.: On the 24th of October, 1853, one Rodgers conveyed to Matthias Wright a tract of land lying in Fentress county, reserving all minerals.  Wright subsequently conveyed the same land to another without making any reservation, and through a series of conveyances the land passed to Allred, each of the deeds by Wright and those claiming under him, purporting to pass an estate in fee.  Facts were agreed upon in the case to the effect that Allred, and those through whom he claimed, had been in the actual, open, and continuous adverse possession of the land, under color of title, for more than seven years before action brought, but that neither he nor any one under whom he claimed had done any mining on the land, or attempted anything of the kind.

Murray claimed the mineral interest under Rodgers, who, as stated, had reserved this interest when he conveyed to Wright.  Allred having refused to permit Murray to enter on the land to explore for minerals, the question was brought before one of the chancellors of the State by an agreed case to settle the rights of the parties.  He decided against Murray, and on appeal

Murray's third assignment of error was that the min-
eral interest by the reservation referred to, having
been severed from the surface, possession of the latter
was not inconsistent with the rights of the owner of
such mineral interest, not adverse, and therefore that
the statute of limitations had not run against him, and
the chancellor erred in not so decreeing.

The court sustained this assignment, basing its de-
cision on the following principles:   That the owner of
real estate may sell the land to one man, the coal, iron,
gas, or oil to another, or others, giving to each pur-
chaser a deed in fee simple for his particular deposit
or stratum, while he retains the surface for agricul-
tural purposes precisely as he held it before; the sever-
ance being complete for all legal and practical pur-
poses, each separate layer or stratum becoming a sub-
ject of taxation, incumbrance, levy, or sale, precisely
like the surface; and the possession of the soil by its
owner for the purpose of tillage, giving him no pos-
session of the underlying minerals; that in order to
make a holding adverse to one who has reserved, or
had granted to him, minerals in place, there must ap-
pear to have been some denial of his right, or assertion
of a claim inconsistent therewith, and that the use of
the surface for agricultural purposes is not the asser-
tion of a right inconsistent with the right of the owner
of minerals to mine under the surface for the purpose
of extracting them.   100 Tenn., 100, 102, 119, 120, 43
S. W., 355, 39 L. R. A., 249, 66 Am. St. Rep., 740.

These principles are supported by a practically solid array of authorities in all the other States where similar questions have arisen, and also by the text-books. *Westmoreland & Cambria Natural Gas Co.* v. *De Witt,* 130 Pa., 235, 18 Atl., 724, 5 L. R. A., 731; *Louisville & N. R. Co.* v. *Massey,* 136 Ala., 156, 33 South., 896, 96 Am. St. Rep., 17; *Gordon* v. *Park,* 202 Mo., 236, 100 S. W., 621, 119 Am. St. Rep., 802; *Catlin Coal Co.* v. *Lloyd,* 180 Ill., 398, 54 N. E., 214, 72 Am. St., Rep., 216; *Kiser* v. *McLean,* 67 W. Va., 294, 67 S. E., 725, 140 Am. St. Rep., 948, and note, pp. 951-969; *Wallace* v. *Elm Grove Coal Co.,* 58 W. Va., 449, 52 S. E., 485, 6 Ann. Cas., 140, and note; *J. R. Crowe Coal & Mining Co.* v. *Atkinson,* 85 Kan., 357, 116 Pac., 499, Ann. Cas., 1915D, 1196, and note; White on Mines and Mining, 32; Barringer & Adams on the Law of Mines and Mining, pp. 36, 59 and 60; 1 Cyc., 994, 995; 2 Corpus Juris, 147, sec. 258; 1 Ruling Case Law, pp. 738, 739, sec. 57.

In the subsequent case of *McBurney* v. *Coal & Coke Co.,* 121 Tenn., 275, 118 S. W., 694, the existence of these principles is fully recognized, but it is said in the opinion that the better rule is that possession of the surface by one who has conveyed to others the underlying minerals in place is a possession in the interest of the latter, as well as for himself; that is, it is also a possession of the minerals. The facts of that case were: Julian F. Scott, claiming ownership of the land, conveyed it, in 1851, to one Duncan, reserving

the underlying coal. Duncan thereafter, between 1851 and 1856, conveyed this land to Edward R. Diden, in several parcels or tracts, by four separate deeds. The question relating to the controversy now before us arose in respect of a certain tract of 342 acres, part of one of the original tracts. Claiming this tract under his father's will, John S. Diden, the son of Edward R. Diden, took possession of it in 1879, and resided upon it continuously, openly, and adversely for twenty-eight years, or until the bringing of the action by McBurney. In 1884, when he had held this land in possession for a period not longer than five years, he conveyed the mineral interest to J. H. Parker & Co. In 1890 Parker & Co. conveyed the mineral interest to Chandler, and the latter, on the same day, conveyed it to the Glenmary Coal & Coke Company. Although, as previously stated, when Julian F. Scott conveyed the land to Duncan he reserved the mineral interest in all the land, the latter, when he conveyed to Edward R. Diden, did not reserve the mineral in the tract of which the 342 acres was a part; but, as just stated, John S. Diden, son of Edward R. Diden, who was the vendee of Duncan, purported to convey such mineral interest in his deed to Parker & Co. It does not appear that either Parker & Co. or the Glenmary Coal & Coke Company ever attempted any mining operations on the 342 acres, nor that they, or either of them, ever did any act indicating a purpose to take possession of the minerals as such, nor does it appear that John S. Diden, the vendor of Parker & Co., during his twenty-eight years' possession of the

surface of the land, ever did or attempted any such act. It is said that no actual possession of the coal itself was claimed. The decision of the court was, simply, that John S. Diden's possession of the surface for more than seven years, claiming the land under color of title (his father's will), openly, continuously, and adversely, inured to the benefit of his conveyee, Parker & Co., and through them to the Glenmary Coal & Coke Company, and that he had thus perfected the title of the latter to the underlying coal, by the statute of limitations before suit brought. It should be stated that McBurney claimed the mineral not under Julian F. Scott, but under Thomas B. Eastland, who had the true title. The fact that the parties were claiming under different chains of title was referred to in the opinion as having an influence in the solution of the question.

The court adopted the opinion of the court of chancery appeals, from which court the case had been brought by appeal. It is said in that opinion:

"In this case the conflict is not between parties claiming under the same chain of title, but between parties claiming under entirely separate and distinct chains of title. It appears to us that the better, safer, and most sensible rule would be to adopt the rule established in those cases where there is a joint or mixed possession by heirs and life tenants, or by mother and child, guardian and ward, etc., where the possessions are held to be consistent, and in harmony, and all under the same title. . . . We think the better rule and principle is to hold that such possession by a man who

has conveyed the mineral rights to others is a posses-
sion in their interest, and in harmony with them, as well
as for himself.   If it be not so held in this case, we have
this peculiar condition of matters presented:   Diden
by his deed conveyed to Parker & Co., and through
them to the defendant Glenmary Coal & Coke Company,
the mineral rights and mining rights; that is, the right
to go upon this land and take out these minerals, and
to use the necessary timber on the land for mining
purposes.   Now, these parties are claiming under him
and under his warranty, and if they be ousted there-
from, can hold him liable on his warranty, and the loss
will be occassioned by the entry  of  a party  against
whom he has been asserting an adverse right for a
period of more than a quarter of a century.   In addi-
tion to that, Diden has certainly been holding the land
for all purposes as against the complainants, and is en-
titled to hold all of it for all purposes, unless it be held
that the coal has been severed, so as not to protect it;
and if it should be decided under this holding that the
complainants have not lost their title to the coal, by
what right or on what principle could it be held that
they can enter upon the surface in order to reach the
coal, and can it be held that they have the right to use
the timber upon the land for  mining  purposes?  We
think, in a case of this kind, as heretofore said, the bet-
ter holding would be that the possession of Diden in-
ured to the benefit of his grantee, to whom the mineral
and mining  rights  were  transferred.  .  .  .  We
are of opinion, as stated, that the  better  and  more

sensible rule, and the rule which will best promote and carry out the purpose and policy of the statute of limitations, by quieting titles, etc., will be to hold that the possession by a grantor (of a mineral interest and mining rights in property) of the surface will inure to the benefit of the grantee of such rights as against third parties; and such is our holding.''

This court after setting out the foregoing added:

''We are of opinion that the court of chancery appeals announces a better rule than that indicated in the authorities we have cited from other States. We are the better contented with this rule in view of the fact that there would be no way of putting complainant in possession of those minerals if his title thereto should be established. The adverse possession of the defendants has deprived the complainant of an easement to remove this coal from defendants' premises, even if it belonged to complainant. Complainant could not assert a way of necessity over the land of defendant Diden to remove the minerals.''

After very careful reflection and a re-examination of the authorities, we are convinced this decision is unsound.

When John S. Diden conveyed the mineral interest to Parker & Co., he severed it (if not already severed by the reservation in Julian F. Scott's deed) from the surface as completely as if the land had been cut into two distinct tracts. *Catlin Coal Co.* v. *Lloyd,* 176 Ill., 275, 52 N. E., 144; *Ames* v. *Ames,* 160 Ill., 599, 43 N. E., 592; *New Jersey Zinc Co.* v. *New Jersey Franklinite*

*Co.,* 13 N. J. Eq., 322, 341-343; *Gill* v. *Fletcher,* 74 Ohio
St., 295, 78 N. E., 433, 113 Am. St. Rep., 962; *Lillibridge*
v. *Lackawana, etc., Co.,* 143 Pa., 293, 22 Atl., 1035, 13
L. R. A., 627, 24 Am. St. Rep., 544; *Gordon* v. *Park,*
supra; *Wallace* v. *Elm Grove Coal Co.,* supra.   Pos-
session of the surface thereafter could not be posses-
sion of the severed mineral.   *Gordon* v. *Park,* supra;
*Wallace* v. *Elm Grove Coal Co.,* supra; *Louisville, etc.,
R. Co.* v. *Massey,* 136 Ala., 156, 33 South., 896, 96 Am.
St. Rep., 17; *Catlin Coal Co.* v. *Lloyd,* supra; *Manning*
v. *Kansas, etc.,* Coal Co., 181 Mo., 359, 377-379, 81 S. W.,
140; *Caldwell* v. *Copeland,* 37 Pa., 427, 78 Am. Dec.,
436; *Armstrong* v. *Caldwell,* 53 Pa., 284; *Huss* v. *Ja-
cobs,* 210 Pa., 145, 59 Atl., 991; *Virginia Coal, etc., Co.*
v. *Kelly,* 93 Va., 332, 24 S. E., 1020.   This is bound to
be true, if, as all the authorities hold, distinct estates
are created by the severance.   And it also follows from
the undoubted rule that the acts of possession required
for the surface, and those for the minerals are dif-
ferent; the latter requiring some form of mining, or
activities directly related thereto.

"The surface owner setting up the statute must es-
tablish a possession of the mine, as such, independently
of his possession of the surface.   Such a possession
must be actual, notorious, exclusive, continuous, peace-
able, and hostile for the statutory period.   And in these
respects the surface owner is in no better position than
a stranger.   .   .   .   Actual possession is taken by
the opening of mines and carrying on mining opera-

tions.''  *Gordon* v. *Park,* supra; *Barringer & Adams* on the Law of Mines and Mining, p. 569.

It is true, as held in *Finnegan* v. *Stineman,* 5 Pa. Super. Ct., 124, that the true owner cannot by executing and recording a deed purporting to convey the mineral, so sever it as to interfere with an adverse possession already begun on the whole tract, or use such deed, as a substitute for a possessory action. The case is altogether different, however, when the person in possession himself surrenders that possession to another. No one doubts that if one in adverse possession of land should convey a distinct part of the tract to another, and place him in possession, or after his conveyance should abandon that possession, he could no longer claim that part of the land under the statute. It is true his vendee might receive the possession, and his subsequent possession, united with the prior possession of his vendor, might make out the seven years' adverse possession for him.  So, too, if the land should be divided, by the supposed vendor, into two estates by severance of the mineral, the vendee might unite the possession existing before the severance with an immediate and continuous possession of the mineral after the severance, and so make out title to the mineral under the statute, but there would have to be appropriate possession of the latter; the statute could not be satisfied merely by the vendor's possession of the surface.

When it is said in the opinion in the McBurney Case that the court should not follow the decisions of other States on the point, but should hold as the better rule

that the possession of the surface was likewise possession of the severed mineral lying within the earth, not only was the uniform rule prevailing in all other jurisdictions disregarded, but our own prior case of *Murray* v. *Allred* as well, and something declared possession which, assuming the existence of a severance of the mineral from the surface, could not, in the nature of things, be possession, any more than one could be said to be in possession of the surface of land which he had conveyed to another, and on which his foot no longer rested. The decision in *McBurney* v. *Coal & Coke Co.* on the point stated is therefore unsound, and on that point must be overruled.

The decision could have been based only on one or the other of these two propositions, viz.: that a conveyance of the mineral did not sever it from the surface, or that if the conveyance did effect such severance, still the possession of the surface was also a possession of the severed mineral. Both propositions are without doubt in conflict with all the authorities, and against the common law. The common law binds courts only less firmly than statutes. Its rules are gradually, almost imperceptibly, enlarged or contracted by the courts, by construction, in the course of their application to new States of fact, to meet the needs of a progressive civilization, but it is not allowable to change them *per saltum*. This can be done only by legislation. It is true the courts of a State may refuse to follow even a consensus of authority in all other States, or even a perfectly well-recognized rule of the common-

Northcut v. Church.

law, on the ground that it is not suited to the genius of the State, or is opposed to its public policy. We know of no public policy of this State, however, which makes the settled rule of other mining States on the subject referred to inapplicable here. The public policy of a State is shown by its statutes and decisions. We have no applicable statute, but *Murray* v. *Allred,* supra, is evidence that we have no public policy which forbids the rule therein applied. That case has been approved in other States, and cited in their decisions, also in the text-books, and it was not in terms overruled, or dissented from, in *McBurney* v. *Glenmary Coal & Coke Co.,* supra.

In respect of the point in the case last mentioned, to the effect that the question should be settled on the theory of a joint or mixed possession, we say such possession is always actual, and the matter for decision always is, to which one of several so in actual possession shall the law impute the legal or true possession, and the answer is, to that one who owns the legal title. *Welcker* v. *Staples,* 88 Tenn., 49, 12 S. W., 340, 17 Am. St. Rep., 869; *Ramsey* v. *Quillen,* 5 Lea (73 Tenn.), 184. In the first-cited case, the persons in actual possession were the husband and wife, and their children, with the legal title in the wife and children, and in the second, the husband and wife, with the title in the wife. In *McBurney* v. *Glenmary Coal & Coke Co.* there was no one in possession of the surface except John S. Diden; so the theory of joint or mixed possession could not be applicable. The only theory left is that Diden being

in possession of the surface, he was by force of that fact also in possession of the underlying coal, and held it as a trustee for the vendee thereof. But this is but another form of the theory which we have already shown is inadmissible, since it assumes that possession of the surface is possession of mineral severed from the surface.

We add one more observation. It was said in that case that it would be futile to give McBurney a recovery for the mineral because the statute had run against him as to the surface, and he could not therefore reach the mineral. This was not a sound reason for refusing to declare his right. Moreover there could be no obstacle to his reaching such minerals by mining or tunneling under the land in question from adjoining lands obtained by purchase or lease. But this would have been unnecessary, because when John S. Diden conveyed the minerals, he, by implication of law, conveyed the right to obtain access to them through the surface, and as against that purpose no longer held the surface adversely. That was an incident to the conveyance of the mineral right, and became a part of that right when severed.

As to the point that McBurney's claim was under another chain of title, we think undue importance was attached to it. The severance was made by Diden himself, thereby depriving himself of the possession of the minerals, and it was at last only a question of possession. Another view of the matter is, that inasmuch as John S. Diden claimed ultimately under Julian F.

Scott, and he had reserved the mineral interest in the deed which he made to Duncan, there was a severance of the mineral at the beginning of John S. Diden's title, with the incidental right of access reserved, but he never had color to the mineral interest, and therefore no sort of possession of it.

The result is that, *Murray* v. *Allred,* supra, is reinstated as authority, and following that case, and the authorities on which it is based, and others in accord, we hold that complainants did not acquire the mineral interest in the 177 acres, under the statute of limitations, or otherwise.

We are constrained to the same conclusion, in respect of the twenty-three acres, on the grounds stated in the early part of the opinion, that it does not appear that the land in question, or how much of it, was ever granted by this State or the State of North Carolina, as required by section 1 of chapter 28 of the Acts of 1819.

Therefore the whole bill must be dismissed at complainants' cost.