Arthur LAYNE and wife, Annie Layne,
Plaintiffs-Appellants,

v.

Herman E. BAGGENSTOSS and wife,
Mary Elizabeth Baggenstoss,
Defendants-Appellees,

William M. Leech, Jr., Attorney General,
State of Tennessee, Intervenor.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 23, 1982.

Application for Permission to Appeal
Denied by Supreme Court
July 6, 1982.

Petition for Rehearing Denied
Sept. 13, 1982.

**2**

Jackson L. Quinton, Chattanooga, Sam R. Raulston, Raulston & Swafford, Jasper, for plaintiffs-appellants.

J. Harvey Cameron, Jasper, for defendants-appellees.

William M. Leech, Jr., Atty. Gen., Joe C. Peel, Asst. Atty. Gen., Nashville, for intervenor.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiffs from a judgment of the Chancellor that defendants are the owners of the mineral rights, including gas and oil, under the surface of plaintiffs' land.

The pertinent facts are as follows:

Both plaintiffs and defendants claim title to their respective interests through the title of Anna Bonn.

Plaintiffs own three contiguous tracts of land: seven acres, nine acres, and fifty acres. There is no question about a reservation of mineral rights being contained in plaintiffs' deeds of the seven and nine acre tracts. However, no mineral reservation is contained in the deed to the fifty acre tract of plaintiffs.

Anna Bonn, by will in 1881, bequeathed the fifty acre tract to her daughter, Mary Ann Scholer. Mrs. Scholer and her husband, John Scholer, conveyed the tract to the Samuel Werner Lumber Company on February 16, 1920, with no mention of a mineral reservation. Plaintiffs acquired the land by contract of sale in 1945 and by warranty deed in 1947. Tax records indicate that plaintiffs and their predecessors have paid taxes on the fifty acre tract as far back as 1924.

Defendants also trace their claim of ownership to the will of Anna Bonn. John and Mary Ann Scholer conveyed several tracts of land including mineral rights to the fifty acre tract to the Thomas Coal and Land Company on November 14, 1903. Title passed through many corporations and individuals and finally to Sewanee Fuel and Iron Company and, after a default by Sewanee on bond payments, the entire remaining assets of the Sewanee Fuel and Iron Company including the mineral rights in question were vested in American National Bank, Trustee, which conveyed the remains of the tracts to defendants in December, 1949.

Plaintiffs present some eighteen issues for our determination. We have divided these into four areas and discuss them as such. The first area deals with the effect to be given to the payment or nonpayment of taxes. Plaintiffs contend that because they have paid property taxes on the fifty acre tract, they should have title to the mineral estate vested in them pursuant to T.C.A. §§ 28–2–109 and 28–2–110. T.C.A. § 28–2–109 provides:

> *Presumption of ownership from payment of taxes.*—Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom he claims have paid, the state and county taxes on the same for more than twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom he claims have had, his deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for said period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of said land.

While § 28–2–109 creates a prima facie presumption of ownership, here there is no showing that plaintiffs paid a separate tax on the mineral estate. Plaintiffs paid taxes as assessed by the Tax Assessor for Grundy County and the proof is that there is no separate assessment of the mineral estate made in Grundy County. In order for minerals to be assessed separately, there must be a request by the owner of the mineral estate.

■ In the instant case for plaintiffs to have obtained title to the mineral estate, they must have done so by adverse possession and there would have had to be an open notorious act of possession. Possession would have had to have been manifest on the premises. *Northcut v. Church,* 135 Tenn. 541, 188 S.W. 220 (1916).

■ Plaintiffs also rely on T.C.A. § 28–2–110, which provides:

*Action barred by nonpayment of taxes.* —(a) Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom he claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state;

. . . .

Section 28–2–110 bars an action from being brought if taxes have not been paid for more than twenty years. Nothing in § 28–2–110 prevents defendants from defending their title. The failure to pay taxes for twenty years does not automatically cause defendants to be ejected.

■ Plaintiffs also contend that the tax statutes, specifically T.C.A. § 67–602, makes an affirmative demand upon property owners to have mineral rights assessed. They contend that defendants did not have the mineral rights assessed until 1972 and

thus are precluded from asserting title. T.C.A. § 67–602(6) provides that "[a]ll mineral interests . . . shall be assessed to the owner thereof, separately from the other interests in such real estate, . . . ." T.C.A. § 67–604 provides ". . . the assessment of all property in the county shall be made by the assessor of property." While at sometime prior to the instant suit being filed it may have been incumbent upon the owner of the mineral estate to have his mineral interests assessed, that is not the case now. T.C.A. § 67–602 required that all mineral interests be assessed and T.C.A. § 67–604 directs the assessor of property to make that assessment.

The Tax Assessor for Grundy County testified that her office makes no effort to determine the value of minerals for tax purposes unless the mineral owner makes a request. In the instant case defendants, in 1972, requested that the mineral interests be assessed and defendants have paid taxes on the mineral estate for the years 1970 forward. Nothing in the record shows that plaintiffs have ever paid taxes upon the mineral estate.

Plaintiffs' issues with respect to taxes are without merit.

■ Plaintiffs' second major issue involves the invocation of T.C.A. § 64–704 (now 66–7–103) which, in part, provides:

*Maximum term of oil and gas leases.* —(a) Any lease of oil or natural gas rights or any other conveyance of any kind separating such rights from the freehold estate of land shall expire at the end of ten (10) years from the date executed, unless, at the end of such ten (10) years, natural gas or oil is being produced from said land for commercial purposes. If, at any time after said ten (10) years' period, commercial production of oil or natural gas shall be terminated for a period of six (6) months, all such rights shall revert to the owner of the estate out of which said leasehold estate was carved. No assignment or agreement to waive the provisions of this subsection shall be valid or enforceable.

This subsection shall not be construed to affect the validity or the expiration date of any lease or other instrument executed prior to March 16, 1939, nor shall it be construed to affect the validity or the expiration date of any lease, conveyance or other instrument insofar as it may convey underground natural gas storage rights, or otherwise separate such rights from the freehold estate, whenever executed.

As has been noted, three tracts of land are involved in this case. The mineral interests in the fifty acre tract was originally severed by the deed of John Scholer and wife, Mary Ann Scholer, to Thomas Coal and Land Company, dated November 14, 1903. Additionally, a deed from Letha Bone and others to Tennessee Mountain Coal and Land Company, dated February 10, 1915, conveyed the mineral interests of the fifty acres. Both of these deeds are in the chain of title of defendants and both were executed prior to March 16, 1939.

The severance of the minerals from the nine acre tract was by deed dated September 21, 1934, from the Sewanee Fuel and Iron Company to C. H. Dykes, defendants' predecessors in title.

Provisions of T.C.A. § 64–704 (now 66–7–103) are not applicable to the fifty acre or the nine acre tracts.

If applicable at all, T.C.A. § 64–704 (now 66–7–103) is applicable only to the seven acre tract where the minerals were severed by a deed from American Trust and Banking Company dated January 5, 1948.

We are of the opinion, after a review of the legislative history surrounding the passage of Chapter 89, Public Acts of 1939 (T.C.A. § 66–7–103), that the intent of the legislature was to provide an expiration date for leases of undeveloped oil and gas rights. The Act provides that oil and gas "rights shall revert to the owner of the estate out of which said *leasehold estate* was carved." (Emphasis added.) The language "revert to the owner of the estate out of which" indicates that the lease of oil and gas rights is carved from an estate that may not be the entire fee simple, i.e., an estate of mineral rights.

Tennessee clearly permits a separation of strata and there may be a fee simple estate for a particular deposit or stratum. *Northcut v. Church,* 135 Tenn. 541, 188 S.W. 220 (1916). In the instant case defendants' estate is a freehold in the mineral rights which includes the oil and gas. It is not an oil and gas lease. T.C.A. § 64–704 (now 66–7–103) is not applicable to the case at bar.

■ Plaintiffs' next issue relates to adverse possession. Plaintiffs contend that due to their possession of the surface under assurance of title for more than thirty years, defendants' title to the oil and gas beneath the surface has been extinguished. In *Northcut v. Church,* 135 Tenn. at 554, 188 S.W. at 223, the Court stated:

The surface owner setting up the statute must establish a possession of the mine, as such, independently of his possession of the surface. Such a possession must be actual, notorious, exclusive, continuous, peaceable, and hostile for the statutory period. And in these respects the surface owner is in no better position than a stranger .... [Citations omitted.]

It is clear that conveyances of rights for interests in minerals creates a separate and distinct estate or corporeal hereditament and one seeking to vest title in himself through adverse possession must establish the elements of the mineral estate separately from the surface. Plaintiffs here have failed to show adverse possession. They have merely possessed the surface.

■ Finally, plaintiffs seek to vest title to the mineral estate in themselves by contending that the deed from the Scholers to the Thomas Coal and Land Company is void for lack of a privity acknowledgement. They also assert that Chapter 151, Public Acts of 1883, does not cure the defect because of its purported unconstitutionality. Chapter 151 repeals the requirement of a certificate by the county court clerk as to the official character of the notary public. Plaintiffs base the unconstitutionality of

this statute on an analysis given in Shannon's Code of 1907. The comment to the unofficial compilation of the Code raises the possibility that this Chapter is ineffective insofar as it attempted to repeal the provisions of Chapter 71, Sections 2 and 3, of the Acts of 1870, which required the county court clerk to certify the official character of the notary. The comment indicates that the amendatory language of Chapter 151 was constitutionally defective because it purported to be an expressly amendatory act and yet, it failed or omitted to cite in its caption, preamble, or body, the title, subject, or substance of the existing law or laws sought to be amended or repealed, in violation of Article 2, Section 17, of the Tennessee Constitution.

We find it unnecessary to determine the constitutionality of Chapter 151, Public Acts of 1883. We are of the opinion that T.C.A. § 64–2606 (now 66–26–106) cures any defect which could result by a declaration that Chapter 151 was unconstitutional. T.C.A. § 64–2606 (now 66–26–106) creates a presumption as to the validity of registrations after a period of twenty years.

It is insisted that these tax deeds were illegally registered because they were acknowledged before the chairman of the county court, who had no authority to take acknowledgments. Both of them were registered in the year 1862. No distinction is made between a void acknowledgment and a defective acknowledgment, under section 3761 of Shannon's Code, in applying the presumption that a deed has been registered upon lawful authority where it has been registered twenty years or more. All inquiry upon the subject of probate is cut off. The presumption becomes absolute and conclusive after twenty years from date of registration. This is held in a long line of cases beginning with *Mathewson v. Spencer,* 3 Sneed, 513.

*Richardson v. Schwoon,* 3 Tenn.App. 512, 519–20 (1925).

We have considered plaintiffs' issue regarding the Chancellor's failure to find certain facts requested by plaintiffs. Plaintiffs state that "no harm would be done by granting the requests" and that "it would have been far better for any factual bases for decision to have been set out by the trier of facts, or for the Chancellor to set out contrary findings if he felt called to do so."

While we are of the opinion that even if the Chancellor committed error as alleged by plaintiffs, no prejudice has been shown to plaintiffs and, further, plaintiffs have failed to comply with Rule 6(a)(3) of the Rules of Court of Appeals by showing wherein they were prejudiced by such alleged error.

We have considered each of the eighteen issues presented by plaintiffs and find them to be without merit. The judgment of the Chancellor is therefore affirmed with costs to plaintiffs and the cause remanded to the Chancery Court for the collection of costs and any other necessary proceedings.

TODD, P.J. (M.S.), and CONNER, J., concur.