**LYLES et al. v. DODGE et al.   (No. 1765.)**

(Court of Civil Appeals of Texas. Amarillo. Feb. 23, 1921.)

1. **Mines and minerals** ⬦⬦55(1)—Owner may separate surface rights from minerals by reservation in deed.

A grantor may by reserving to himself the mineral rights in land and conveying to the grantee only the surface rights effectually separate the two estates.

2. **Mines and minerals** ⬦⬦49—Boring well unsuccessfully held insufficient adverse possession as to minerals.

Where land was granted with a reservation of mineral rights and a remote grantee bored a well to a depth of about 300 feet for obtaining either water or oil, such act *held* not sufficient to show such adverse possession of the mineral rights as was necessary to set the statute of limitation in operation; no oil or water being discovered, and the well being subsequently abandoned.

3. **Mines and minerals** ⬦⬦49—Reservation of oil leases insufficient to constitute notice under statute.

Where land was sold with a reservation of mineral rights, a subsequent registration of oil leases *held* insufficient to constitute notice of adverse possession, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 6842.

Appeal from District Court, Archer County; H. F. Weldon, Judge.

Trespass to try title by Belle Z. Lyles and others against G. M. Dodge and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

R. S. Morrison and W. E. Forgy, both of Archer City, for appellants.

Thompson, Barwise, Wharton & Hiner and F. B. Walker, all of Fort Worth, for appellees.

HALL, J. This is a suit in trespass to try title, filed by Mrs. Belle Z. Lyles, joined by her husband, J. D. Lyles, and G. T. Abercrombie, against W. E. Kaufman and Percy Jones. Plaintiff sued for a section of land in Archer county, setting up the statutes of limitation of five and ten years, and alleging that appellees were claiming some interest to the mineral rights in said land. Appellees Kaufman and Jones answered by general demurrer, plea of not guilty and general denial, and specially pleaded the title to the oil and gas rights and the right to enter upon the land for mining purposes. The issues were tried before the court without a jury, resulting in a judgment for the defendants. The substance of the court's findings is that on and prior to August 1, 1903, G. M. Dodge was the owner in fee sim-

ple of the land in question; that on said date he conveyed the land to L. M. Webb, by general warranty deed, expressly reserving to the grantor, his heirs, vendees, and assigns, all of the oil and other mineral on or under said land, also expressly reserving the right to enter upon the premises to prospect for minerals and work and operate mines. That the plaintiffs Lyles and wife, by conveyance dated October 1, 1904, acquired the land in controversy through mesne conveyance from L. M. Webb; that such conveyance did not vest in them any right or interest in the land not acquired by Webb from Dodge; that appellant Abercrombie is the holder and owner of an oil and gas lease executed by Lyles and wife, February 18, 1919, conveying the mineral rights in said land; that on October, 1904, E. L. Webb conveyed to appellants Lyles and wife the land in controversy by a deed which did not reserve the mineral rights; that said deed was duly filed and recorded in the deed records of Archer county, December 31, 1904; that soon after Lyles and wife acquired the land they inclosed it by substantial fences and became actual occupants thereof, and have continuously occupied the same, either in person or by tenants, since October 1, 1904, claiming said land and all interest therein adversely; that they have paid the taxes thereon from the time they acquired it to the present; that they have not recognized the right, title, or interest of any one to any part of said land, including the oil and minerals thereunder; that about 60 days after October 1, 1904, and as a part of their plan of improving the land, there being no water on it, Lyles and wife procured some unknown party to bore a well thereon to the depth of about 300 feet, for the purpose of obtaining either water or oil; that the work of boring this well covered a period of about six months. Neither oil nor water having been found, the well was thereupon abandoned. None of the holders of oil or mineral leases from Lyles, nor the defendants, nor any one for them, or holding under them, have ever discovered oil or other minerals on said land or taken any further steps to bore than as is hereinbefore stated. That on September 2, 1911, Lyles and wife executed to the Pure Oil Operating Company an oil and gas lease of said land, which was filed for record in Archer county, October 17, 1911, and was duly recorded January 5, 1914; that they executed a further oil and gas lease of said land to H. E. Head and W. M. Snyder, which was filed for record in Archer county, March 6, 1914, and duly recorded February 18, 1919; that they executed to plaintiff Abercrombie an oil and gas lease to said land which was filed in Archer county March 18, 1919, and duly recorded; that the appellees Kaufman and Jones are the owners and holders of

⬦⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

all the right, title, interest, and claim in and to the oil and other mineral rights in said land, reserved by G. M. Dodge, in his said conveyance to L. M. Webb of date August 1, 1903, having title to said oil and mineral rights through regular chain of title and mesne conveyances from G. M. Dodge; that neither the appellees nor any of their vendors holding and owning said mineral and oil rights, so reserved in the deed from G. M. Dodge to Webb, had any notice or knowledge of the boring of said well, nor did they have any knowledge of any claim asserted by plaintiffs to any mineral or oil rights in said land, other than such notice, or knowledge, if any, imputed to them constructively by the registration of the oil and gas leases made by J. D. Lyles and wife, as hereinbefore set out. We find no statement of facts accompanying the record.

The first assignment of error is that the court erred in concluding as a matter of law that as to the appellants there was a severance of the mineral estate from the surface estate, since Lyles and wife purchased the whole estate, which was conveyed to them by their vendor, E. L. Webb, and that under such conveyance they were the owners of the entire estate for the purposes of limitation.

By the second assignment it is insisted that since appellants acquired the entire estate from Webb by the terms of their deed, and had ever since held peaceable and adverse possession thereof for the full period of five years, such adverse possession gave them title to both the surface estate and minerals.

It is contended under the third assignment that the court erred in concluding as a matter of law that there had been no such occupancy, claim, or adverse possession of the oil and mineral estate as would sustain the plea of limitation by plaintiffs, because the court found as a fact that the plaintiff had bought the whole estate, surface and mineral, from E. L. Webb, by deed, which had been duly recorded; that appellants had promptly paid all taxes since said date, having adverse possession thereof during said period, and had followed their claim of title by sinking a well on the land for oil, and further asserted their claim by leasing the same to various parties for oil and gas development, which leases were duly recorded.

[1-2] It seems to be settled law in this state that a grantor may, by reserving to himself the mineral rights in land and conveying to the grantee only the surface rights, effectually separate the two estates. Luse v. Parmer, 221 S. W. 1031; Luse v. Boatman, 217 S. W. 1096 (writ of error refused). This is also the holding in Wallace v. Hoyt, 225 S. W. 425, in which Judge Key further holds that, where the mineral rights have been severed from the surface rights by a remote grantor of the possessor, the latter's possession of the premises under a deed making no mention of the mineral rights does not make such possession adverse as to the minerals. Judge Key's opinion, with citation of many authorities supporting it, is convincing, and we think decisive of the question. The trial court found that about 60 days after appellants acquired the land as a part of their plan of improving the tract, the said land having no water thereon, procured some unknown party to bore a well to a depth of about 300 feet for the purpose of obtaining either water or oil, does not in our opinion show such adverse possession of the mineral rights as is necessary to set the statute of limitation in operation. However this may be, the court further found that neither water nor oil was discovered, that the well was abandoned and that no further steps or means had been taken by any one to discover oil or other minerals on the premises since. The courts in other jurisdictions have held that in the absence of actual possession of the minerals in such cases, and in the absence of the fact that the claimant has reduced such minerals to possession and held the same for the statutory period of limitations, the statute does not run. This seems to be the view of Judge Key, in the Wallace-Hoyt Case, where it is said:

"Appellees contend that * * * as the appellants never acquired nor held adverse possession of the minerals, they were properly denied recovery on their pleas of limitation. We sustain appellees' contention."

The rule is announced in West Virginia in the case of Plant v. Humphries, 66 W. Va. 88, 66 S. E. 94, 26 L. R. A. (N. S.) 558, as follows:

"The possession of the surface does not carry with it possession of the coal under it, where the estate in the coal has been severed as to title. * * * His allegation of possession of the coal is not sufficient. He does not show facts distinguishing his possession of the coal from his possession of the overlying surface. This coal as an estate is severed in title from the land. For the surface owner to aver possession of coal severed in title from the land, he must state that he has had actual physical possession of the coal, apart from his possession of the surface, as by operating mines in the coal."

In the case of Kiser v. McLean, 67 W. Va. 294, 67 S. E. 725, 140 Am. St. Rep. 948, the same court said: "He can only take possession of them [the minerals] by drilling wells."

And in the case of Newman v. Newman, 60 W. Va. 371, 55 S. E. 377, 7 L. R. A. (N. S.) 370, it is said:

"True, the statute of limitations does not apply, because the coal was not developed, and there was no possession of it, as it was in a state of nature."

In the case of Gill v. Fletcher, 74 Ohio St. 295, 78 N. E. 433, 113 Am. St. Rep. 962, the Supreme Court of Ohio said:

"It is not disputed that title to a mine which has been severed from the title to the surface may be acquired by adverse possession; but this can take place only when the possession is actual, continuous, open, notorious, and hostile. It cannot be accomplished by secret trespass upon the owner's rights and it has been held in many cases that, where there has been a severance of estates, neither the owner of the surface nor the owner of the mine can claim the other estate merely by force of the possession of his own estate. Nor does the mine owner lose his rights by mere nonuser. His title can only be defeated * * * by acts which actually take the mineral out of his possession."

The Supreme Court of Missouri, in the case of Gordon v. Park, 202 Mo. 236, 100 S. W. 627, 119 Am. St. Rep. 802, declares:

"Such a possession must be actual, notorious, exclusive, continuous, peaceable, and hostile for the statutory period. * * * Actual possession is taken by the opening of mines and carrying on of mining operations. That possession is continuous if the operations are continuous, or are carried on continuously at such seasons as the nature of the business and the customs of the country permit or required. A cessation of operations in accordance with the custom of the neighborhood, or from necessity occasioned by some natural agency, would not be an interruption of the possession but there must be something evidencing possession in the interval which connects the operations when resumed with those which had gone before, and to distinguish such possession from a series of repeated acts of trespass"—quoting with approval from Baringer & Adams, p. 569.

It will be observed that the court does not specifically find that the well which appellants drilled to 300 feet was an effort to discover oil. The finding states that there was no water on the premises, and the reasonable inference is that their primary purpose was to secure water. If, however, they had in view development for the purpose of discovering oil, the court's finding is conclusive that they abandoned this effort, and, even if it be admitted that it was sufficient to constitute adverse possession, it was not such an actual and visible appropriation of the mineral estate commenced and continued under a claim of right, inconsistent with and hostile to the claim of appellees as is contemplated by V. S. C. S. art. 5681. Chief Justice Willie, in Bracken v. Jones, 63 Tex. 184, declares that—

"Possession, to be of any value to vest a right or bar a remedy, must be actual, continued, visible, notorious, distinct and hostile. It must be fair and open, as 'the statute was not made to serve the purpose of artifice and trick.'"

[3] The court found that neither the appellees, nor any one under whom they claim, ever had actual notice or knowledge of the digging of the well. The subsequent registration of oil leases, even if they had been recorded for a sufficient length of time to meet the requirements of the statute, would not constitute notice. V. S. C. S. art. 6842; Werts' Heirs v. Vick, 203 S. W. 63; White v. McGregor, 92 Tex. 556, 50 S. W. 564, 71 Am. St. Rep. 875; Hill v. Harris, 26 Tex. Civ. App. 408, 64 S. W. 820.

What is here said also disposes of the fourth assignment.

The judgment is affirmed.

---

⬅⬆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes