ARMSTRONG et al. v. HUMBLE OIL & REFINING CO. et al.

No. 3992.

Court of Civil Appeals of Texas. El Paso.

Oct. 24, 1940.

Rehearing Denied Dec. 5, 1940.

The suit was brought in the District Court of La Salle County, sitting at Cotulla, by Mrs. A. Y. Armstrong, as plaintiff, against Humble Oil & Refining Company, Mrs. Ada Pumphrey, a feme sole, Grace Armstrong, a feme sole, Mrs. Daisy Armstrong, a feme sole, O. R. Armstrong, Vivian Armstrong Nichols, Ralph Nichols, Inez Ada Kercheville and J. A. Kercheville, as defendants.

Between plaintiff and defendants, exclusive of Humble Oil & Refining Company, the controversy was over the respective interests of the parties in the one-third mineral interest in issue. Plaintiff claims as surviving widow of Armstrong, Sr., deceased. Defendants claim as children and grandchildren of Armstrong, Sr., deceased.

The controversy between plaintiff and the heirs of Armstrong, Sr., was compromised before trial.

Between plaintiff and the Armstrong heirs on the one side, and Humble Oil & Refining Company on the other, the controversy was as to the ownership of the one-third mineral interest described in plaintiff's petition. Humble claimed it as lessee under mineral leases emanating from other parties. Before the trial Humble purchased a mineral lease from plaintiff and the Armstrong heirs. C. A., R. A., Fred C., and Arthur C. Goeth filed a petition of intervention setting up the ownership of C. A. Goeth in all the minerals in 700 of the 12,000 acres described in plaintiff's petition, and all of the Goeths jointly asserted ownership of all the minerals in another 345 acres, also part of the said 12,000 acres. The claims of the Goeths expressly recognized the rights conveyed by them by mineral lease given to one Carter, who assigned to Humble. Interveners' pleading presented an action in trespass to try title. Plaintiff and the Armstrong heirs answered jointly by general demurrer, general denial, a plea of not guilty, and filed a cross action in the form of trespass to try title, asserting their ownership of one-third of the minerals in the land claimed by interveners. The interveners and Mrs. Armstrong and the heirs of Armstrong, Sr., recognized the validity of their lease to the Humble, and interveners recognized the validity of the lease given by them to Carter, which was assigned to Humble.

Humble filed answer setting up that it held mineral leases under both sets of

Armstrong & Jaffe, of El Paso (W. C. Wofford, of Taylor, of counsel), for appellants.

Dodson, Ezell & Duke and Goeth, Webb & Goeth, all of San Antonio, and Felix Raymer, of Houston, for appellees.

PRICE, Chief Justice.

The nature and result of this suit is admirably stated by appellants. Same seems to be acquiesced in by appellees, and we shall substantially adopt same.

This is an action in trespass to try title involving a one-third mineral interest in some 12,000 acres situate in La Salle County.

competing claimants, and praying that the court adjudicate the extent to which it held under each set.

The case was tried to the court without a jury. Judgment was that plaintiff take nothing against defendants and interveners; that interveners recover in their suit against plaintiff and the Armstrong heirs; that the leases from interveners held by Humble be confirmed and ratified.

Plaintiff and the Armstrong heirs have perfected this appeal.

The trial court, on request of appellants, filed findings of fact and conclusions of law.

It is agreed between the parties that Andrew Armstrong, Sr., is the common source of title. The question then presented is as to who holds the superior title emanating from the common source. Appellants claim that Andrew Armstrong never conveyed away the one-third mineral interest involved herein. If this position is sustained, the judgment of the trial court should be reversed and rendered in appellants' favor. On the other hand, if it appear that Andrew Armstrong did convey the one-third mineral interest away before his death, the judgment should be affirmed, because, if conveyed, it was conveyed to interveners or their predecessors in title.

The facts are undisputed and, it may be said, of no great complication. Correct disposition of the case depends on the proper construction of written instruments.

On April 17, 1901, Andrew Y. Armstrong, owner of 18,060.5 acres of land in La Salle County, mortgaged 9,081 acres thereof to M. J. Barlow & Company to secure the payment of his note in the sum of $10,800. On the same day he conveyed to Caley and Uhl, Jr., all of the said 18,060.5 acres, less 40½ acres reserved for road purposes, and likewise he reserved from the conveyance one-third of the mineral estate in the land. Consideration of this conveyance was recited as $5,000 cash, assumption by the grantees of the said $10,800 note payable to Barlow & Company, and the execution and delivery of six promissory notes, each in the sum of $4,124.50, payable to grantor. A vendor's lien was retained to secure the payment of the assumed note and the said six purchase money notes.

On July 1, 1901, Armstrong borrowed $10,000 from H. P. Drought & Company,

and to secure his note in that amount pledged the six promissory notes executed and delivered to him by Caley and Uhl, Jr., same being secured by vendor's lien on the property conveyed to them on April 17, 1901.

On April 18, 1903, Uhl, Jr., and the successors in title of Caley, C. A. Goeth and Chas. Deussen, paid Armstrong's note of $10,800 in favor of Barlow & Company. It being the same note assumed by the grantees in the conveyance of April 17, 1901. Lockwood National Bank, at the time of the payment, was the owner of the note. In a single instrument Lockwood National Bank released to Armstrong, Sr., the mortgage given by him on the 9,081 acres securing the payment of this note, and Armstrong released to Caley and Uhl, Jr., C. A. Goeth and Chas. Deussen, assignees of Caley, the vendor's lien securing the Caley and Uhl, Jr.'s assumption of Armstrong, Sr.'s note. This release will hereinafter be particularly discussed.

On April 28, 1903, Armstrong, Sr., for the total consideration of $20,409.90, sold and assigned to Drought & Company the six Caley and Uhl, Jr., notes totaling $24,744.90, together with the vendor's lien and superior title securing their payment.

On November 28, 1905, H. P. Drought & Company released and quitclaimed to Caley and Uhl, Jr., and C. A. Goeth and Chas. Deussen, as assignees of Caley, the vendor's lien and superior title securing the payment of the six notes. The consideration of this release and quitclaim was the payment of these notes by Uhl, Jr., and C. A. Goeth and Chas. Deussen.

Now the instruments alleged, which are claimed to have divested the title out of Armstrong, Sr., to the reserved one-third mineral interest, are, first, the instrument dated April 18, 1903, in the execution of which Armstrong, Sr., joined with the Lockwood National Bank; second, the instrument of April 28, 1903, wherein Armstrong, Sr., sold and assigned, for a consideration of $20,000, the six Caley and Uhl notes aggregating $24,744.90, together with the vendor's lien and superior title securing their payment.

The determination of whether these instruments conveyed Armstrong's reserved one-third mineral interest is determinative of the case.

Although these instruments are somewhat lengthy, it is deemed necessary to set same forth in full.

The instrument of April 18, 1903, is as follows:

"The State of Texas,
"County of La Salle.

"Whereas, Andrew Armstrong, Sr., of La Salle County, Texas, did on the 17th day of April, 1901, execute and deliver to R. A. Gilmer, Trustee, of La Salle County, Texas, a certain deed of trust on the following described property situated in La Salle County, Texas, to-wit: Being all of Surveys Nos. 1, 2, 3, 10, 11, 12, 13, 20, 21, 22, 23, 34 and 35, each containing 640 acres of land, also the East half of Survey No. 36, containing 320 acres, all of said 14 surveys being made for and patented to the I. & G. N. R. R. Co.; also Survey No. 8, Cert. 340 in the name of and patented to W. P. Kerr, containing 441 acres of land, making the aggregate of 9081 acres, which said deed of trust is recorded in La Salle County, Texas, in Vol. 3, pages 403 to 405, which said deed of trust record is hereby referred to, said deed of trust being given to secure the payment of one promissory note for the sum of $10,800.00 dated April 17, 1901, due two years after date, payable to M. J. Barlow & Co., at Cotulla, Texas, with interest at 8 per cent per annum from date until paid, interest payable annually in advance; and,

"Whereas, said note with all interest thereon has been fully paid and at the time of said payment said note was the property of the Lockwood National Bank of San Antonio, Texas.

"Now, Therefore, Know All Men By These Presents, that the said Lockwood National Bank, acting herein by and through J. S. Lockwood, its President, joined by R. A. Gilmer, Trustee, acting at the request of the owner and holder of said note, in consideration of the premises and of the full and final payment of said note, receipt of which is hereby acknowledged, have this day and by these presents do remise, release and quitclaim unto the said Andrew Armstrong, Sr., his heirs and assigns, the lien heretofore existing upon said premises by virtue of said deed of trust and do hereby declare the same fully released and satisfied.

"And, whereas, I, Andrew Armstrong, Sr., did on the 17th day of April, 1901, by deed duly recorded in La Salle County, Texas, in Vol. L, pages 520-525, grant, sell and convey to Henry Caley and Alexander J. Uhl, Jr., all of the land hereinbefore described as well as certain other lands fully described in said deed, which is hereby referred to, and whereas, in and by said deed said Henry Caley and Alexander J. Uhl, Jr., assumed the payment of the said note for $10,800.00 hereinbefore described and secured by deed of trust recorded in Vol. 3, pages 403–405, of Trust Deed and Mortgage Record of La Salle County, Texas, and, whereas, said note for $10,800.-00 hereinbefore referred to, has this day been paid by Alexander J. Uhl, Jr., and C. A. Goeth and Chas. Deussen who became the owners and purchasers of the interest of said Henry Caley in said land conveyed to him by said deed of April 17th, 1901, and, whereas, a vendor's lien is retained in said deed to Henry Caley and Alexander J. Uhl, Jr., to secure the payment of said note to M. J. Barlow & Co., for $10,800.00, and, whereas, said note has been paid and discharged to my satisfaction.

"Now, Therefore, Know All Men By These Presents, that I, Andrew Armstrong, Sr., of the County of La Salle and State of Texas, for and in consideration of the premises and the full and final payment of said note for $10,800.00 and interest due thereon and for value received, have remised, released, quitclaimed, discharged and acquitted unto the said Henry Caley and Alexander J. Uhl, Jr., and to the said Goeth and Deussen, assigns of said Caley and their heirs and assigns, the vendor's lien heretofore existing upon said land by reason of said note for $10,800 and I hereby quitclaim unto them all the right, title and interest I have in said premises described in said deed to Henry Caley and Alexander J. Uhl, Jr., recorded in La Salle County records, Vol. L, pages 520-25, retaining only a vendor's lien against said land to secure the payment of the remaining six notes for $4124.15 each, described in said deed to Henry Caley and Alexander J. Uhl, Jr., so far as the same remain unpaid.

"Witness our hands this 18th day of April, 1903.

"Lockwood National Bank
"By J. S. Lockwood, President
"Andrew Armstrong, Sr.
"R. A. Gilmer, Trustee."

The instrument of April 28, 1903, is as follows:

"The State of Texas,
"County of La Salle.

"Whereas, I, Andrew Armstrong, Sr., of the County of La Salle and State of Texas, did, by deed dated April 17th, 1901, and recorded in Book L, page 520 of the Records of La Salle County, State of Texas, convey to Henry Caley and Alexander J. Uhl, Jr., of the County of Bexar, State of Texas, for and in consideration of Five Thousand ($5000) Dollars to me in hand paid, and of six (6) promissory notes, in amounts and maturities as follows:

(Description of six promissory notes as to amounts and dates of maturity) "to me then and there delivered, bearing interest at the rate of seven (7%) per cent from date, which interest is due and payable annually, the following described tract or parcel of land, situated in the County of La Salle, State of Texas, to-wit:

(Description of property)

"Aggregating Eighteen Thousand and Sixty and ½ acres, *less* 15¼ acres sold to La Salle County, and is included in and covered by what is known as the Carrizo Springs Road, *less* also 25¼ acres, included in and is covered by a certain road in direction of Batesville and entirely on the west side of said lands of the width of 30 feet; the title of which is reserved by A. Armstrong, Sr., which said two roads run on, over and across the lands herein conveyed or part thereof; said two roads aggregating 40½ acres, leaving Eighteen Thousand and Twenty (18,020) acres conveyed hereby.

"And for additional description of the above lands reference is hereby given to the deed from Andrew Armstrong, Sr. to Henry Caley and Alexander J. Uhl, Jr., dated April 17, 1901, and recorded in Book L, page 520 et seq., of the Deed Records of La Salle County, Texas. Upon which was reserved a vendor's lien for the surer payment of said notes;

"And, whereas, said described notes so given for the balance of the purchase money due on said property are unpaid, and I, the said Andrew Armstrong, Sr., having sold, endorsed and delivered the aforesaid purchase notes to H. P. Drought and Company,

"Now, Be It Known, That I, the said Andrew Armstrong, Sr., in consideration of Twenty Thousand Four Hundred and Nine and 90/100 ($20,409.90) Dollars, to me in hand paid by the said H. P. Drought and Company, the receipt whereof is hereby acknowledged, does guarantee the payment of said vendor's lien notes and has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto the said H. P. Drought and Company my right, title and interest in the above described land, including my superior title thereto; and assign to said H. P. Drought and Company my right of sale, and also my right to recover the said land in case the said purchase notes shall remain unpaid after maturity, and all rights that I have as vendor with unpaid consideration, the same as though the said H. P. Drought and Company were the original owners and vendors of said land.

"And I Hereby Covenant, That all said purchase notes assigned as aforesaid are unpaid; that the said vendor's lien is unsatisfied, in whole or in part, and that the said paramount title, which is hereby conveyed to the said H. P. Drought and Company, is in full force and virtue.

"I having sold the vendor's lien notes hereinabove described to H. P. Drought and Company, this assignment is given to convey any interest either in the above described vendor's lien notes or the land described and conveyed in the deed from me to Henry Caley and Alexander J. Uhl, Jr., hereinbefore referred to, which may not have been conveyed by me to said H. P. Drought and Company by assignment dated July 1st, 1901, recorded in Book L, page 573 to 577 of the Deed Records of La Salle County, Texas.

"Witness my hand, this 28th day of April, A. D. 1903.

"Andrew Armstrong, Sr."

In the construction of any written instrument the purpose is to arrive at the intent of the parties thereto as expressed therein. The language used is to be interpreted in the light of the situation of the parties and the subject matter dealt with by the writing.

Let us first deal with the release by the Lockwood National Bank and Armstrong, Sr., to Uhl, Jr., and Goeth and Deussen, assignees of Caley. Payment of the note for $10,800 had been secured by Armstrong by his deed of trust dated April 17, 1901, to Gilmer, Trustee, wherein some 9081 acres of the approximate 18,000 acres owned by Armstrong were pledged for its

payment. This deed of trust was a lien on all the interest held by Armstrong in the 9081 acres of land. On the same day Armstrong sold to Uhl and Caley this 9081 acres, together with the balance of the approximate 18,000 acres, reserving to himself in the conveyance one-third mineral interest in and to the lands conveyed. Among other consideration for this latter conveyance was the assumption by Uhl, Jr., and Caley of the $10,800 note aforesaid. To secure the deferred payments and the assumption of this note an express vendor's lien was retained in favor of Armstrong. After this assumption Armstrong, as to Uhl and Caley, was a surety for the $10,800 note. His one-third mineral interest in the 9,081 acres was likewise a security therefor.

Uhl, Jr., and the assignees of Caley paid the $10,800 note. This payment had the effect of freeing the mineral estate of Armstrong, Sr., in the 9,081 acres of land, of freeing the land of the lien created by the deed of trust, of freeing the 18,000 acres of the vendor's lien held by Armstrong, Sr., to secure the assumption of the $10,800 note. The assigns of Caley had not assumed the $10,800 note, but acquired their interest subject to same.

It is very clear that the release in question, insofar as the Lockwood National Bank is concerned, conveyed nothing to interveners' predecessors in title. The discharge of the lien it previously held was evidenced thereby. Clearly it evidenced the extinguishment of the vendor's lien of Armstrong securing the assumption of the note in question. Further, by its terms, it was only a partial release of the rights of Armstrong, Sr.

The consequences of the construction contended for by appellees would be that Armstrong, Sr., conveyed, free from all incumbrances, his mineral estate of one-third in the entire approximate 18,000 acres. There is no evidence of any contract or obligation on the part of Armstrong so to do. Wanting, likewise, is any reasonable consideration for him so to do. This last statement should possibly be coupled with the recognition that the assigns of Caley had not assumed the $10,800 note. In any event, their payment thereof was in protection of their own rights in and to the property.

 It must likewise be borne in mind that the one-third mineral interest had been, by reservation in the deed from Armstrong, Sr., to Uhl, Jr., and Caley, severed from the estate in the surface. Same was as foreign and distinct from the estate in the surface as though each were a separate and distinct tract of land. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296.

 To our minds it clearly appears from the instrument that Armstrong only quitclaimed the interest he held in the land conveyed to Uhl and Caley. This was the entire surface estate in the 18,000 acres, and two-thirds of the mineral estate; one-third remained vested in him so far as the release in question is concerned.

 We come now to the consideration of the conveyance by Armstrong, Sr., to H. P. Drought & Company dated April 28, 1903. This instrument we have hereinbefore set forth in full. If this conveyed anything other than the six notes involved and the lien securing same, interveners (defendants) have title to such additional estate or rights.

Much that has been said in relation to the release applies to this instrument. The vendor's lien retained in the conveyance by Armstrong, Sr., to Uhl and Caley never attached to the one-third mineral interest here involved. That interest, as has been stated, was not included in the conveyance, but reserved therefrom.

Now a careful consideration of this entire instrument discloses that all that was sought to be thereby consummated was the vesting of the title to the notes in H. P. Drought & Company, together with all security held by Armstrong therefor. In relation to the notes the aim was to endow Drought & Company with all the rights held by Armstrong with relation thereto. This, the instrument consummated. Its only legal effect was this: the land referred to was the land conveyed by Armstrong, Sr., to Uhl and Caley. This, to our mind, clearly and indisputably appears from the entire instrument, read as a whole.

Our construction of the legal effect of the instrument in question finds support in the following cases: Sanborn v. Crowdus Bros. & Co., 100 Tex. 605, 102 S.W. 719; Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296; Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W.2d 381; Carter & Bro. v. Davis, Tex.Civ. App., 88 S.W.2d 596; Owen v. Associated Oil Co., Tex.Civ.App., 281 S.W. 607.

The title to the one-third mineral interest reserved by Armstrong was not divested during his life. It is now vested in his surviving wife and legal heirs, subject, however, to an oil and gas lease in favor of the Humble Oil & Refining Company.

From the record it appears that Mrs. A. Y. Armstrong owns one-half of such one-third interest; Mrs. Ada Pumphrey one-fourth; Mrs. Inez Ada Armstrong Kercheville, Vivian Armstrong Nichols, and Grace Armstrong, each, respectively, one-twelfth thereof.

It is, therefore, ordered that the judgment of the trial court is hereby reversed, and that judgment is rendered that Mrs. A. Y. Armstrong, Mrs. Ada Pumphrey, Mrs. Inez Ada Armstrong Kercheville, joined by her husband, J. A. Kercheville, Vivian Armstrong Nichols, joined by her husband, Ralph Nichols, and Grace Armstrong, do have and recover of and from C. A. Goeth, R. A. Goeth, Fred C. Goeth and Arthur C. Goeth, and against Mrs. Daisy Armstrong, on her disclaimer, the title and possession of the one-third undivided mineral interest in and to the lands involved, subject, however, to said mineral lease held by the Humble Oil & Refining Company from appellants. The recovery of said appellants as to the one-third interest to be in the respective proportions hereinbefore set forth; and that as to said one-third interest aforesaid the interveners take nothing.

Reversed and rendered.