**CARMINATI et al.**

v.

**FENOGLIO et al.**

No. 15498.

Court of Civil Appeals of Texas.

Fort Worth.

April 2, 1954.

Rehearing Denied April 30, 1954.

T. B. Coffield, Bowie, for appellants P. A. Carminati and others.

Marvin F. London, Joe H. Cleveland, Bowie, and McDonald & Anderson and Geo. W. Anderson, Wichita Falls, for appellants the Mrs. K. D. Fenoglio Group.

Donald & Donald, Bowie, Boyd Barjenbruch, Montague, Tipps, Masters & McCormick, and O. R. Tipps, Wichita Falls, for appellees.

BOYD, Justice.

This suit was filed by appellants, P. A. Carminati and others, against three groups of defendants referred to as the Paul Veretto group, the Barney Fenoglio group, and the Mrs. K. D. Fenoglio group, seeking the reformation of a deed executed by Paul Veretto and Barney Fenoglio to John Carminati on February 11, 1905, to remove cloud from title, to quiet title, and for judgment decreeing that they are the owners of the minerals in and under the land involved, and in the alternative that they

are the owners of the oil and gas and all minerals other than gold and silver. They also assert title under the ten-year statute of limitation and under Article 5519a, R. C.S. These appellants claim the property by deed from John Carminati and his present wife as well as by inheritance from his deceased wife. Mrs. K. D. Fenoglio was the assignee of notes and vendor's lien retained by Barney Fenoglio on the land sold to John Carminati, and the Mrs. K. D. Fenoglio group of defendants are her heirs.

In the deed from Paul Veretto and Barney Fenoglio to John Carminati there appears this provision:

"It is expressly agreed and understood by all the parties to this instrument that all minerals in the above described lands are retained by the grantors herein, and there is also reserved the right and privilege of prospecting on said land for minerals, and mining therefor, and erecting all such buildings as may be or become necessary on account of such mining operations; but in the event any damage be done to any buildings of said conveyed premises, or to any of the tillable land, by such mining operations, then and in that event the grantors agree to pay for such damages the amount thereof to be determined by arbitration."

In the transfer of the vendor's lien and notes by Barney Fenoglio to Mrs. K. D. Fenoglio there is this provision: "* * * and have and do hereby Bargain, sell and Quit-Claim all my right, title, interest, estate, claim and demand both legal and equitable, in and to said' land and every part thereof, together with all and singular the hereditaments and appurtenances thereunto appertaining.". This transfer was made on February 9, 1907, and the notes were released by Mrs. Fenoglio on January 6, 1911, her release containing the following: "But it is intended to release only the above named three notes."

Plaintiffs alleged that the execution of the deed from Veretto and Fenoglio to John Carminati was the result of accident or mistake of all parties thereto in so far as the term minerals in the reservation may be held or claimed to include oil and gas; and that all of the parties to said instrument intended that the reservation should, and believed at the time that it did, include only gold and silver, and reserved those minerals only for the term of a contract the grantors had theretofore made with B. B. Walker. It was alleged that the Walker contract terminated on June 18, 1906; that about the year 1906 John Carminati took actual custody and possession of the land and the mines, shafts and holes dug by B. B. Walker, and took custody and actual possession of same under a claim of right and ownership, which was well known to Paul Veretto and Barney Fenoglio; that said John Carminati and the plaintiffs have since said time been in actual, uninterrupted and undisputed control, dominion and custody of said land and all improvements thereon and minerals therein; and at all times asserted their claim to all of said land, including all minerals therein.

The Paul Veretto and Barney Fenoglio groups filed an answer claiming the minerals in said land by inheritance from the grantors in the deed to John Carminati, and the Mrs. K. D. Fenoglio group filed an answer claiming ten-elevenths of the minerals under the instrument which assigned the vendor's lien and notes from Barney Fenoglio to Mrs. K. D. Fenoglio.

The Paul Veretto and Barney Fenoglio groups filed motion for summary judgment, asserting that there was no material fact issue and that they were entitled to recover as a matter of law; that the minerals were severed from the surface and reserved to the grantors in the deed of February 11, 1905, and that any claim of the plaintiffs of the right of reformation was barred by the four-year statute of limitation. The plaintiffs and the Mrs. K. D. Fenoglio group of defendants filed answers to the motion for summary judgment, and plaintiffs also filed a motion for summary judgment. Plaintiffs' motion for summary judgment was overruled and that of the Paul Veretto and Barney Fenoglio groups of defendants was sustained. Plaintiffs and the Mrs. K. D.

Fenoglio group of defendants have appealed.

In our consideration of the case we must assume that the Carminati group of appellants, plaintiffs below, can establish on a trial that it was the understanding and agreement of Paul Veretto, Barney Fenoglio and John Carminati that oil and gas were not to be reserved in the deed of February 11, 1905; and if, therefore, their claims are not barred by limitation, the summary judgment was erroneously entered as to them.

Paul Veretto died in 1916 and Barney Fenoglio died in 1924. The deed which is herein sought to be corrected was delivered and filed for record on February 11, 1905, and this suit was filed on July 17, 1952. The Carminati group of appellants did not plead or offer to prove any reason or excuse for not sooner bringing the suit for reformation of the deed.

█ In our opinion all minerals, including oil and gas, were as a matter of law reserved in the deed from Paul Veretto and Barney Fenoglio to John Carminati. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217; Luse v. Boatman, Tex.Civ.App., 217 S.W. 1096, writ refused; Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W.2d 381; Warner v. Patton, Tex.Civ.App., 19 S.W.2d 1111, writ refused; Watkins v. Certain-Teed Products Corporation, Tex.Civ.App., 231 S.W.2d 981; Luse v. Parmer, Tex.Civ. App., 221 S.W. 1031, writ refused; Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501.

█ We think that Article 5529, R.C.S., applies to this case. It provides: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward." "It is the established law in this state that suits brought to correct mistakes in deeds are governed by Article 5529, Revised Civil Statutes of 1925, and that, if such a suit is not brought within four years next after

the right to bring it shall have accrued is barred * * *." Kennedy v. Ellisor, Tex.Civ.App., 154 S.W.2d 284, 286, writ refused. See Hamilton v. Green, Tex.Civ. App., 166 S.W. 97; Pure Oil Co. v. Ross, 131 Tex. 41, 111 S.W.2d 1076; McCampbell v. Durst, 15 Tex.Civ.App. 522, 40 S.W. 315; Gaither v. Gaither, Tex.Civ.App., 234 S.W.2d 135, writ refused n. r. e.

█ Where the vendee is chargeable with knowledge of a mistake in his deed, limitation begins to run from the time of the delivery of the deed. Cleveland State Bank v. Gardner, Tex.Com.App., 286 S.W. 173; Yost v. Wilson, Tex.Civ.App., 27 S.W. 2d 286; Gulf Production Co. v. Palmer, Tex.Civ.App., 230 S.W. 1017, writ refused; McCampbell v. Durst, supra; Mounger v. Daugherty, Tex.Civ.App., 138 S.W. 1070.

█ We think the burden was on the Carminati group of appellants to allege and offer to prove the existence of facts that would excuse their failure sooner to file the suit. Rowe v. Horton, 65 Tex. 89; Oldham v. Medearis, 90 Tex. 506, 39 S.W. 919; Clopton v. Cecil, Tex.Civ.App., 234 S.W.2d 251, writ refused n. r. e.; Texas Osage Cooperative Royalty Pool v. Colwell, Tex. Civ.App., 205 S.W.2d 93, writ refused n. r. e.; Mathis v. Stockdick, Tex.Civ.App., 189 S.W.2d 106, writ refused.

█ Actions to reform a deed procured by fraud are governed by Article 5529, and it seems to be settled that such actions are barred in four years after the defrauded party discovered, or by the exercise of reasonable diligence might have discovered, the fraud. Pitman v. Holmes, 34 Tex.Civ.App. 485, 78 S.W. 961; Vodrie v. Tynan, Tex. Civ.App., 57 S.W. 680; Munson v. Hallowell, 26 Tex. 475; Anding v. Perkins, 29 Tex. 348; Bremond v. McLean, 45 Tex. 10; Kuhlman v. Baker, 50 Tex. 630; Kennedy v. Baker, 59 Tex. 150; Brown's Heirs v. Brown, 61 Tex. 45; Calhoun v. Burton, 64 Tex. 510; Bass v. James, 83 Tex. 110, 18 S.W. 336. In Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263, it was held that a suit filed on November 1, 1936,

to set aside because of fraud an exchange of lands effectuated by the granting of deeds on November 25, 1931, was barred by this article, the plaintiffs having failed to plead or prove any excuse for their failure to file within four years after the execution of the deeds.

■ After a thorough consideration of the oral arguments ·and the able and elaborate briefs of the parties, we have reached the conclusion that the cause of action to reform the deed is barred by the four-year statute of limitation.

Although the Carminati group of appellants pleaded causes of action other than for the reformation of the deed, such as to remove cloud from title, to quiet title, and for a decree declaring that they are the owners of the minerals by virtue of the deed, such asserted causes of action involved title, and depended upon the reformation of the deed reserving the minerals. Such consequential relief could not be had until they prevailed in their effort to 'reform the deed by cancelling or modifying the reservation. Cleveland State Bank v. Gardner; Hamilton v. Green; Gulf Production Co. v. Palmer, all supra.

The Carminati group further contend that it was error to grant the summary judgment against them because they had the right to prove and were in a position to prove that their title to the minerals had matured under the ten-year statute of limitation and under Article 5519a. They plead that they "have been in peaceable and adverse possession of the said tract of land, including the surface estate and all oil, gas and other minerals" for more than ten years prior to filing the suit, and have "openly exercised dominion over and asserted claim to the above described land and premises and all the oil, gas, and other minerals therein, and have paid taxes thereon annually before becoming delinquent for as many as 25 years during such period."

Article 5510 is in part as follows: "Any person who has the right of action for the recovery of lands, tenements or heredita-

ments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward."

Article 5519a provides: "In all suits involving the title to land not claimed by the State, if it be shown that those holding the apparent record title thereto have not exercised dominion over such land or have not paid taxes thereon, one or more years during the period of twenty-five years next preceding the filing of such suit and during such period the opposing parties and those whose estate they own are shown to have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually·before becoming delinquent for as many as twenty-five years during such period, such facts shall constitute prima facie proof that the title thereto had passed to such persons so exercising dominion over, claiming and paying taxes thereon."

■ Of course, where there has been no severance of the mineral estate from the surface, the ordinary rules of adverse possession apply. But the minerals were severed and reserved by the grantors in the deed to John Carminati. And where the mineral estate has been severed, its owner does not lose his title by any length of non-user, and the surface owner does not acquire title to the minerals by adverse possession based on his exclusive possession, occupancy, control and dominion over the surface, even though he is asserting title to the minerals all the time. Rio Bravo Oil Co. v. McEntire, supra; Blocker v. Davis, Tex.Civ.App., 241 S.W.2d 698, writ refused, n. r. e.; Yates v. State, Tex.Civ.App., 3 S.W.2d 114; Elliott v. Nelson, supra; Luse v. Boatman, supra; Wallace v. Hoyt, Tex.Civ.App., 225 S.W. 425, writ refused; 31-A Tex. Jur., p. 42, sec. 15; Lyles v. Dodge, Tex. Civ.App., 228 S.W. 316; West v. Hapgood, 141 Tex. 576, 174 S.W.2d 963; Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599; Terry v. Terry, Tex.Civ.App., 228 S.W. 299; Chapman v. Dickerson, Tex.Civ.App.,

223 S.W. 318; Henderson v. Chesley, Tex. Civ.App., 229 S.W. 573, writ refused; annotation in 67 A.L.R., beginning on page 1440; King v. Hester, 5 Cir., 200 F.2d 807.

Even if "dominion" be something less than "possession," as intimated in Wiggins v. Houston Oil Co. of Texas, Tex.Civ. App., 203 S.W.2d 252, we think the same difficulty is encountered by these appellants regardless of which statute is invoked. Under Article 5510, possession and, under Article 5519a, dominion must be exercised over the *minerals,* and possession of and dominion over that part of the land conveyed by the deed are not sufficient, regardless of how long they may be continued or how exclusively they may be maintained. We fail to see how dominion can be exercised over severed minerals because it is exercised over the surface any more than that possession of the surface is possession of the minerals. Under either article, limitation can only be set in motion by adverse possession or dominion of the *minerals,* and continued for the statutory period.

Article 5515 reads as follows: " 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

Limitation can be asserted against the owner of a severed mineral estate by the surface holder only by taking actual possession of the minerals for the statutory period. Wallace v. Hoyt, supra; Lyles v. Dodge, supra; Bodcaw Lumber Co. v. Goode, 160 Ark. 48, 254 S.W. 345, 29 A.L.R. 578; Hoskins v. Northern Lee Oil & Gas Co., 194 Ky. 628, 240 S.W. 377; Thomas v. Young, 93 W.Va. 555, 117 S.E. 909; Central Trust Co. v. Harless, 108 W.Va. 618, 152 S.E. 209.

To acquire title to minerals after they have been severed in title from the surface, their possession must be "actual, open, notorious and hostile" for the limitation period, as distinguished from possession of the surface. 1 R.C.L., p. 739, sec. 57; Gill v. Fletcher, 74 Ohio St. 295, 78 N.E. 433;

Caldwell v. Copeland, 37 Pa. 427, 78 Am. Dec. 436; Gordon v. Park, 202 Mo. 236, 100 S.W. 621; Newman v. Newman, 60 W.Va. 371, 55 S.E. 377, 7 L.R.A.,N.S., 370. The adverse claimant "must keep his flag flying in a visible and hostile manner." Delaware & H. Canal Co. v. Hughes, 183 Pa. 66, 38 A. 568, 569, 38 L.R.A. 826, 63 Am.St.Rep. 743. It has also been held that an adverse claimant can only take possession of oil and gas by drilling a well. Kiser v. McLean, 67 W.Va. 294, 67 S.E. 725. " * * * it is essential to effect adverse possession of minerals, after severance, in title, from the surface, that the adverse claimant do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional, desultory, or temporary—acts suitable to the enjoyment and appropriation of the mineral so claimed, and hostile to the rights of the owner. * * *" Hooper v. Bankhead & Bankhead, 171 Ala. 626, 54 So. 549, 551. See also Pond Creek Coal Co. v. Hatfield, 6 Cir., 239 F. 622; Vance v. Clark, 4 Cir., 252 F. 495; Armstrong v. Caldwell, 53 Pa. 284; Uphoff v. Trustees of Tufts College, 351 Ill. 146, 184 N.E. 213, 93 A.L.R. 1224; Claybrooke v. Barnes, 180 Ark. 678, 22 S.W.2d 390, 67 A.L.R. 1436.

Although the Carminati group of appellants offered to show that from time to time they sold "minerals, rock and other substances from said land," and "mined minerals" for a short time, and that this was known to appellees, we are constrained to believe that they have failed to allege or to tender evidence of probative force that they have exercised such continued adverse possession of the minerals as would mature their title under the ten-year statute, or such continued dominion over the minerals as to constitute prima facie proof that title to the minerals has passed to them.

The Mrs. K. D. Fenoglio group of appellants contend that the court erred in granting the summary judgment against them because parol evidence was admissible to show the situation of the parties to the transfer and release of the vendor's lien and notes;

to explain the language contained therein; that Barney Fenoglio intended to transfer his mineral interest to Mrs. K. D. Fenoglio; that they were prepared to prove these facts and that the acquisition of the mineral interest was the moving inducement for the purchase of the notes by Mrs. Fenoglio. We must assume that all admissible extrinsic facts alleged by this group are true.

We think the decision in Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 298, 29 A.L.R. 607, controls our disposition of the contention that the instrument transferring the vendor's lien and notes conveyed any interest in the minerals which had been reserved by the grantors from the conveyance occasioning the execution of the notes. In that case, Kennedy sold some land to Sanches and reserved "'* * * all the oil and minerals * * *'" in the land and reserved a vendor's lien to secure the payment of purchase money notes. Thereafter he transferred the notes and lien to Rotan Grocery Company, using an instrument identical with that used by Barney Fenoglio to transfer his notes and lien to Mrs. Fenoglio. The court said: "* * * He [Kennedy] was the holder of the fee-simple title to the minerals in place, severed from the remainder of the land, * * *. An examination of the assignment of the vendor's lien notes, quoted above, leaves no doubt as to which of the titles or estates he conveyed to the Rotan Grocery Company. * * * As a matter of inducement, explanatory of the occasion and purpose of the instrument, it refers to the execution of the vendor's lien notes heretofore described, secured by the lien on 'two tracts or parcels of land out of the Pedro Varilla 11-league grant this day sold to F. M. Sanches on September 30, 1899,' which, as we have seen, did not embrace the minerals in place. The instrument then states: 'And whereas a vendor's lien is reserved and retained on *said land* to secure the payment of said notes and each thereof: Now, therefore know all men by these presents, that I, the said C. A. Kennedy, for a valuable consideration, have assigned, transferred and delivered said five notes to the Rotan Grocery Company and

in consideration of the premises and the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, have bargained, sold and conveyed, assigned and set over to the said the Rotan Grocery Company my lien on *said land* and have and do hereby bargain, sell and quitclaim all my right, title, interest, estate, claim and demand, both legal and equitable, in and to said land,' etc. * * * In the transfer of the vendor's lien notes before us the words 'said lands' in each instance necessarily refer to the land previously designated as that conveyed by Kennedy to Sanches on September 30, 1899. This reference is plainly to the deed from Kennedy to Sanches by which the notes were created and the lien retained, and the assignment must be construed in connection with that deed. * * * Therefore the general words in the assignment describing the land are necessarily limited to the land conveyed to Sanches, which did not embrace the minerals in place. * * * It is clear to us that the assignment of the vendor's lien notes, executed by Kennedy, when construed in connection with the deed, conveyed to the Rotan Grocery Company only the notes, the lien reserved to secure them, and the naked legal title retained by Kennedy for the same purpose; and did not convey the minerals in place excepted in the Sanches deed, and held by Kennedy in fee. This is the common sense construction, and in our opinion produces the result contemplated by, and effectuates the intention of, the parties to the instrument."

We are unable to agree with these appellants that the fact that the trial court in the case last quoted from submitted the question of the intention of the parties to the jury and had a finding thereon, can affect the applicability of that decision to the facts of the instant case. We construe the holding to be that as a matter of law Kennedy did not transfer any title to minerals by the instrument transferring the vendor's lien and notes. We hold that these appellants do not own any of the minerals by virtue of the assignment of the notes and lien to Mrs. Fenoglio. Pagel v. Pumphrey, Tex.Civ.App., 204 S.W.2d 58; Armstrong

v. Humble Oil & Refining Co., Tex.Civ. App., 145 S.W.2d 692.

We have considered all the points presented by both groups of appellants and think that reversible error is not reflected by any of them.

The judgment is affirmed.

RENFRO, J., not participating.