Virgie HUGHES, Juanita Hughes Stephens, Paul Boyd Hughes, Jr., Nancy Mildred Hughes, Elizabeth Ann Hughes, Kenneth Hughes, Robert Allen Hughes, Emma Ross Hughes, and Douglas Hughes, Plaintiffs/Appellants,

v.

COWAN STONE COMPANY, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 9, 1988.

Rehearing Denied Sept. 30, 1988.

Certiorari Denied by Supreme Court Dec. 5, 1988.

Robert S. Peters, Swafford, Peters & O'Neal, Winchester, for plaintiffs/appellants.

Thomas T. Pennington, B. Anthony Saunders, Denney, Lackey & Chernau, Nashville, for defendant/appellee.

## OPINION

F. LLOYD TATUM, Special Judge.

This is an appeal by the plaintiffs below from the action of the Chancery Court of Franklin County granting a motion for summary judgment. The plaintiffs present issue that the Chancellor erred in sustaining the motion.

In the first count of the complaint, the plaintiffs allege that they are owners of a tract containing 550 acres of land in Franklin County which was leased to the defendant, Cowan Stone Company, on November 10, 1956. It is charged that there is a 15-pole strip of land extending from the main tract to the L & N Railroad and that this 15-pole strip is a part of the 550 acres tract (referred to in the record as 548 acres). It is alleged that the defendant has placed extensive improvements on the 15-pole strip. The complaint alleges that the lease has expired and that the plaintiffs are entitled to the possession of the 15-pole strip. The first count is brought in ejectment to recover said land, including the 15-pole strip.

In count 2 of the complaint, it is alleged that the defendant has mined and removed limestone from the leased property of 550 acres without paying royalty according to the terms of the lease. It is prayed that the defendant be required to furnish a survey of the outside boundaries of the leased premises and an underground survey and accounting. The plaintiffs sue in the second count for an accounting, damages, and unpaid royalties.

Answering count 1 of the complaint, the defendant denied the material allegations therein. The defendant denies that the plaintiffs own the 15-pole strip. The defendant states that it has a deed to the 15-pole strip, has paid taxes on it continuously for more than 20 years and it pleads adverse possession and the Statute of Limitations contained in T.C.A. § 28-2-101, et seq.

Pleading to the second count, the defendant states that it has complied with the terms of the lease and that the claim is barred by the statute of limitations. The defendant also states that plaintiffs have waived any requirement to make the initial survey as required by the lease. The defendant also denies that it mined and removed limestone from the property without paying all royalties due. The defendant denies that it was bound to make an underground survey and that it had concealed or neglected to furnish adequate accountings to the plaintiffs. The defendant pleads the 6-years Statute of Limitations.

The defendant filed a motion for a summary judgment pursuant to Rule 56 of the

Tennessee Rules of Civil Procedure. The parties filed numerous affidavits with over 40 exhibits.

The Chancellor found that the lease was for only mineral rights and that the Statute of Limitations could therefore run on surface rights. The Chancellor observed that according to the affidavits, the defendant was paying taxes on the property, was holding it under color of title, and was utilizing the surface for building, machinery, storage, and in a manner that was adverse to the plaintiffs' interest. The court found there was no permissive use of the surface except for mine entries. Consequently, the Chancellor held that the defendant had adverse possession of the 15–pole strip which defeated the first count of the complaint (ejectment from the surface).

The Court also held:

"Let us assume for the purpose of this motion that the defendant occupied the plaintiffs' land. The plaintiffs allege that such occupation is with their consent because of the Lease. For this purpose, it is extremely important that the Lease was for only mineral rights. Therefore, since there has been a separation of mineral rights and surface rights, the Statute of Limitation could run on the surface rights, provided the defendant was holding itself out for an adequate period of time as the owner. Certainly the defendant was doing just that. Under the affidavits it was paying tax on the property; it was holding under the color of title; and most important, it was utilizating [sic] the surface for building, machinery, storage, all in a manner that was adverse to the plaintiffs' interest. There was no permissive use of the surface. This Court is cognizant of the fact that a leasing of mineral rights allows the lessee to have mine entries and do that which is consistent with taking the ore from the ground, but in the instant case, the defendant totally utilized, to the exclusion of others, the surface rights. Consequently, it is held that regardless of all else, the defendants have a protective shield under adverse recession [sic] to defeat this action of ejectment for the surface.

It is important that we remember a controversy is involved as to where the property lines run. The plaintiffs allege that the defendant has not paid them for the ore or limestone which was beneath the surface of the 15 pole strip. If this is trust (sic), it shows that the area which the defendant was holding was held adversely outside the scope of the Lease. The plaintiff brought no action for any limestone that was mined. Consequently, the Court also holds the sub-surface was being held adversely and also rules in favor of the defendant.

Thirdly, after reviewing the statements of the parties and attempting to analyze the deeds the plaintiffs have filed to support their chain of title, the Court is of the opinion they also fail in this respect. There is no need, however, to go into this issue, which might require proof."

In summary, the Chancellor held that an issue existed as to who had legal title to the 15–pole strip; but, assuming that legal title was vested in the plaintiffs, as they allege, then the defendant had more than 7 years adverse possession under color of title and therefore, would own the property by adverse possession if it did not have legal title.

In 1956, the plaintiffs entered into a mineral rights lease with the defendant, allowing the defendant to mine limestone from the sub-surface of the large tract of land referred to in the complaint. The lease contained two descriptions of the land, one of which did not mention a 15–pole strip, but the other description concluded with the following:

"... including also the piece of land 15 poles wide running from said tract of land to the railroad and indicated on what is known as the John F. Anderson map." (No further description of any 15–pole strip was mentioned in the lease.)

The lease stated its purpose as follows: "*PURPOSES.* The purpose for which the land demised hereby is the underground mining of, and the right to re-

move, all limestone under said land, and in order to so quarry, mine and remove said limestone, the lessee is granted all necessary rights-of-way across said land, and the right to make all necessary excavations for mines, and install all necessary air shafts, ventilators, and entrances and exits, to and from said underground mine."

We have no difficulty in finding that the lease was for sub-surface rights only, except for ingress and egress and mine entrances.

The lease terminated according to its terms in November, 1978. This suit was filed February 1, 1980.

Before proceeding further, we will again examine Rule 56, Tenn.R.Civ.P. Before a motion for a summary judgment may be sustained, it must appear that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56.03, Tenn. R.Civ.P. As on a motion for a directed verdict, the court deciding a motion for summary judgment must view the pleadings and evidence before it in the light most favorable to the opponent of the motion, on an issue-by-issue basis. *Wyatt v. Winnebago Indus., Inc.,* 566 S.W.2d 276 (Tenn.App.1977). This court, in ruling on motions for summary judgment, must consider the matter in the same manner as the trial court. *Berry v. Whitworth,* 576 S.W. 2d 351 (Tenn.App.1978).

In an affidavit filed by the defendant made by Thomas C. Summers, the defendant's president, it is stated, in summary, that the property upon which is located the defendant's plant was acquired by the defendant in 1946 from Oolitic Mining, which had maintained buildings and improvements on the property since 1934. The boundary line of the improved strip of land is well marked and well known to the plaintiffs and their predecessors in title. Throughout the period from 1946 until the filing of this suit, the plaintiffs and their predecessors have made no objection to any of the surface or sub-surface operations on the property. The affidavit states that the defendant has paid taxes on the property since 1946. The surface operations of the defendant were known to the plaintiffs before the execution of the lease and all during its term. No objection was ever raised until 1978, according to the affidavit.

The defendant also filed an affidavit of George Daniels, a surveyor, stating that there was no 15–pole strip on the plaintiffs' land, although the lease mentioned one. No 15–pole strip can be identified or located. This point is contradicted by the affidavit of another surveyor, filed by the plaintiffs. The latter affidavit filed by the plaintiffs, stated that the building and plant facilities of the defendant are on the 15–poles strip. Therefore, there is an issue as to whether the 15–pole strip was included in the lease. Thus, the Chancellor properly concluded that summary judgment was not appropriate with respect to the legal title of the strip.

The plaintiffs' proof by affidavits did not contradict the defendant's proof with respect to the defendant's adverse possession claim with regard to the surface of the 15–pole strip. The plaintiffs' affidavits focused exclusively on their assertion to superior title by virtue of the recorded chain of title. Thus, no issue of fact was demonstrated. Although it was mentioned by plaintiffs in oral argument that there were two 15–pole strips, this is the only 15–pole strip upon which is located the defendant's buildings and improvements. The existence or location of any other 15–pole strip is not shown. The record does not indicate that any portion of this strip was used for removal of stone or that any mines were located thereon. The Chancellor properly granted summary judgment with regard to the adverse possession claim of the defendant with respect to the surface of the strip. As stated, in reaching this conclusion, the Chancellor assumed that there was a 15–pole strip where the building and improvements of defendant were located as alleged by plaintiffs in their complaint.

Possession of the surface of land is not possession of the underlying severed mineral interest. When the surface and

sub-surface title to land has been severed, acts of possession of the surface and minerals are different; the latter requiring some form of mining, or activities directly related thereto. *Northcut v. Church,* 135 Tenn. 541, 188 S.W. 220 (1916). Also see *Layne v. Baggenstoss,* 640 S.W.2d 1 (Tenn. App.1982).

The surface and sub-surface interests in the 550 acres, were severed in the year 1956 by the lease to the defendant of the mineral rights. Thus, from 1956 to 1978, the defendant had the right to possession of the sub-surface of the entire tract, including any 15–pole strip embraced therein, by virtue of the lease.

■ The affidavits do not establish that the alleged 15–pole strip was mined or that any act of adverse possession took place with respect to the sub-surface of such strip. The Chancellor incorrectly stated that "The plaintiffs allege that the defendant has not paid them for the ore or limestone which was beneath the surface of the 15–pole strip." The plaintiffs alleged that they had not been paid for ore and limestone taken from the entire 550 (also referred to as 548 acres) acres tract; the plaintiffs did not allege that any ore or limestone had been taken from under the portion of the tract where the 15–pole strip is actually located. The record does not reveal if or when the area of the 15–pole strip was mined. For this reason, we reverse the Chancellor in holding that the sub-surface of the 15–pole strip if leased from plaintiffs, was acquired by the defendant by adverse possession. We pretermit the question as to whether the failure to pay royalties under the lease would have constituted adverse possession had it been established that such strip had been mined for a sufficient time.

We now address the contention of plaintiffs that in granting summary judgment the Chancellor ignored Count II of the complaint, which is an action for an accounting and unpaid royalties. The defendant states that this issue was waived because the plaintiffs made no mention of it in their petition to rehear.

The petition to rehear was formerly recognized in Chancery practice. Vol. 2, *Gibson's Suits in Chancery,* Crownover, 5th Ed. § 1405. That designation has been abolished. Rule 59, Tenn.R.Civ.P. The petition to rehear, when appropriate, may be treated as a motion for a new trial. *Bemis Co., Inc., v. Hines,* 585 S.W.2d 574 (Tenn. 1979). The petition filed in this case was, in substance, a motion for a new trial.

Motions for a new trial are optional in non-jury cases; a party may request a trial judge in a non-jury matter to reconsider actions which the trial judge has taken, "but this is not, nor should it be, a prerequisite to appellate review of those actions." *McCormic v. Smith,* 659 S.W.2d 804 (Tenn. 1983). Therefore, the plaintiffs did not waive appellate review by not assigning this issue in their "petition to rehear."

Although the Chancellor did not mention Count II in its memorandum opinion, he did enter a judgment dismissing the entire complaint, including Count II. The only proof in the record on the question of unpaid royalties is the affidavit of Thomas C. Summers, the defendant's president, stating, in part, as follows:

"29. That the Hughses have been paid for every ton of stone removed from this property during the lease term according to the surveys conducted with the respect to the boundary lines of which they were aware."

■ The above statement might have been vulnerable to objection, but no objection was made. Hence, it must be considered. See *Wachovia Bank & Trust Co., N.A. v. Glass,* 575 S.W.2d 950 (Tenn.App. 1978). The statement is not refuted by counter-proof.

■ However, Count II is a suit for an accounting. It charges that the defendant has mined limestone from the 550 acres without paying royalty as provided in the lease and that the defendant has not made adequate accounting of the limestone removed. The proof does not disclose that the defendant has made an accounting; the record is silent on this point. There is evidence that the defendant is not bound to make a survey but we do not understand

this to mean that it is not bound to account for the stone removed. It is impractical to expect the plaintiffs to refute the general statement in Mr. Summers' affidavit that plaintiffs have been paid "for every ton of stone", without an accounting. Only an accounting can establish whether plaintiffs have been paid for all of the stone removed.

The party moving for a summary judgment must establish "that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law." *Williamson Cty. Broadcasting v. Williamson Cty. Bd. of Education,* 549 S.W.2d 371 (Tenn.1977). When weighing such a motion, if the mind of the court entertains any doubt whether or not a genuine issue exists as to any material fact, it is its duty to overrule such motion. *Poore v. Magnavox Co. of Tennessee,* 666 S.W.2d 48 (Tenn.1984). We cannot say that the proof established beyond doubt that no issue exists as to Count II of the complaint. Hence, we reverse with regard to Count II.

We affirm the Chancellor's holding that if the 15–pole strip does exist, the suit is barred by the defendant's adverse possession as to the surface. In all other respects the judgment of the Chancellor is reversed.

One-half of the costs will be paid by plaintiffs and the remaining one-half will be paid by the defendant. The case is remanded for trial.

TODD, P.J., and CANTRELL, J., concur.