# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
### September 6, 2000 Session

## DOLLY JULIET RAKIRO MADU v. FIDELIS OBI MADU

### Appeal from the Circuit Court for Davidson County
### 99D-537    Muriel Robinson, Judge

---

### No. M1999-02302-COA-R3-CV - Filed October 25, 2000

---

This appeal involves the dissolution of a three-year marriage between a naturalized citizen and a foreign national attending school on a temporary student visa. Soon after the parties were divorced by agreement in the Circuit Court for Davidson County, the foreign national sought to set the divorce aside because of its effect on her efforts to remain in the United States. The trial court declined to set the divorce aside. The foreign national asserts on this appeal that the trial court should not have declared the parties divorced and that the trial court erred by denying her motion for a new trial based on newly discovered evidence. We have determined that the record supports the trial court's decision to declare the parties divorced and that the trial court did not err when it denied the foreign national's post-trial motion. Accordingly, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Randle W. Hill, Jr., Nashville, Tennessee, for the appellant, Dolly Juliet Rakiro Madu.

Dan R. Alexander, Nashville, Tennessee, for appellee, Fidelis Obi Madu.

### OPINION

Fidelis Obi Madu and Dolly Juliet Rakiro Madu met in 1994. Ms. Madu, a 34-year-old citizen of Kenya, was pursuing an undergraduate degree at Tennessee State University under a student visa. Mr. Madu, a Nigerian by birth, was a 39-year-old tax accountant working in Nashville and was a naturalized citizen of the United States. The Madus, along with Mr. Madu's two children from a previous marriage, began living together shortly after they met. Ms. Madu had never been married before.

As time passed, Ms. Madu became more insistent about getting married. The parties were eventually married on July 17, 1996 – two weeks before her graduation from Tennessee State University and two weeks before the expiration of her student visa. The marriage enabled Ms. Madu to remain in the United States. In September 1996, Ms. Madu accepted a job as a software engineer requiring her to move to Chicago. At first, the Madus alternated weekly trips between Nashville and Chicago and talked frequently by telephone. After two years, the distance became increasingly difficult to manage, and the frequency of the parties' visits diminished. In early 1998, Ms. Madu agreed to consider returning to Nashville and began to seek employment. She was unsuccessful in her efforts to find employment in Nashville, and the relationship between the parties continued to deteriorate. Between January and March 1998, the parties did not communicate at all.

After the parties' marriage in July 1996, Mr. Madu filed a petition with the Immigration and Naturalization Service ("INS") seeking alien relative status for Ms. Madu which, if granted, would have enabled Ms. Madu to remain in the United States. In March 1998, Ms. Madu returned to Nashville for an interview with the INS concerning the petition. During this visit, she told Mr. Madu that she did not intend to return to Nashville and that she did not plan to remain married to him after she received her green card. Soon after learning Ms. Madu's intentions, Mr. Madu withdrew his petition and informed the INS that the parties had been living apart for quite some time.

Ms. Madu returned to Nashville in June 1998 to repair her differences with Mr. Madu. In February 1999, after eight months of acrimonious cohabitation, Ms. Madu filed a complaint for legal separation in the Circuit Court for Davidson County.[1] Mr. Madu counterclaimed for an absolute divorce on the grounds of inappropriate marital conduct, irreconcilable differences, and cruel and inhuman treatment. During the July 1999 divorce hearing, Ms. Madu's lawyer urged the trial court to grant a legal separation instead of a divorce.[2] The trial court rejected the request and, after a portion of the proof had been presented, suggested a recess to enable the parties to discuss a mutually satisfactory resolution of their differences.[3] Following a brief recess, Ms. Madu's lawyer announced

---

[1] Ms. Madu made a clear tactical decision to seek a legal separation as opposed to a divorce. She stated in her complaint that "[g]iven the wife's current, uncertain immigrant status, the granting of an absolute divorce could result in the wife's deportation." In her prayer for relief, she also requested "[t]hat no absolute divorce be decreed in this case unless and until the wife has attained permanent resident status in this country."

[2] The lawyer representing Ms. Madu at trial stated: "We have filed, with this court, literally, under the new statute, a petition for separate maintenance, as opposed to divorce, because Mrs. Madu, at this time, is not a legal immigrant, in this country, and we were concerned that a divorce would further the efforts of deportation."

[3] The record unfortunately does not contain the colloquy between the trial court and the parties' lawyers regarding the reasons for rather abruptly stopping the trial. The only statement shedding any light on the issue is the following statement by the trial court: "Because I don't think either one of you all want to go to the Court of Appeals with these two. Let's go off the record." Thereafter, the transcript indicates that there was an "off-the-record discussion" between the trial court and the parties' trial counsel followed by a "brief recess." The trial court's decision to conduct a portion of these proceedings "off-the-record" causes this court concern because it undermines the parties' right to an appeal and is contrary to the settled principle that Tennessee's state trial courts are courts of record. However, neither party has questioned the appropriateness of the trial court's decision to conduct "off-the-record" proceedings. Accordingly, we will not address this issue further except to note that it is highly irregular.

that the parties had agreed on a division of the marital estate and that the trial court should declare them divorced under Tenn. Code Ann. § 36-4-129(b) (Supp. 1999). The trial court approved the terms of the parties' settlement, granted the parties leave to amend their complaints, and declared the parties "divorced," having found both parties guilty of misconduct. The trial court entered its final divorce decree on August 11, 1999.

Ms. Madu retained a new lawyer shortly after the entry of the final divorce decree. Within thirty days after the entry of the divorce decree, Ms. Madu's new lawyer filed a motion seeking to set aside the divorce decree and for a new trial. The motion asserted that Ms. Madu possessed new evidence that Mr. Madu had engaged in an extramarital affair that had resulted in the pregnancy of another woman and that she was unaware when she agreed to the divorce that it would result in her deportation by preventing her from obtaining permanent residency status. The trial court heard argument on these motions in September 1999 and, on November 7, 1999, entered an order denying Ms. Madu's motion. On this appeal, Ms. Madu takes issue with the trial court's denial of her post-trial motions and with the trial court's decision to declare the parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b).

# I.
## THE PARTIES' DIVORCE UNDER TENN. CODE ANN. § 36-4-129

Ms. Madu asserts that the trial court improperly declared the parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b) because the trial court stated from the bench that "neither one of them [the Madus] are entitled to a divorce." She points out that declaring the parties divorced upon stipulated grounds must be premised on a finding that "either or both parties are entitled to a divorce." While Ms. Madu's understanding of the requirements of Tenn. Code Ann. § 36-4-129(b) is correct, she has taken the trial court's remarks from the bench out of context.

We must give effect to every part of the judgments we are called upon to construe, and we must read these judgments in light of the pleadings and the record as a whole. *John Barb, Inc. v. Underwriters at Lloyds of London*, 653 S.W.2d 422, 423 (Tenn. Ct. App. 1983). Accordingly, we must examine the trial court's statements from the bench in context. After Ms. Madu's lawyer announced that the parties had agreed to be divorced in accordance with Tenn. Code Ann. § 36-4-129(b), the trial court stated:

> Okay. I'll declare the parties divorced. Having found that both are guilty of misconduct, therefore neither one of them are entitled to a divorce, but I'll declare them divorced. I'll approve the terms of the settlement presented to the Court and make that the judgment of the Court.

When considered in their entirety, the trial court's findings reflect that the trial court had determined that both parties were at fault for the divorce but that neither party was entitled to be awarded the divorce in his or her own right. Rather than awarding one party the divorce, the trial court, following

Tenn. Code Ann. § 36-4-129(b), simply declared the parties divorced. The trial court's finding is amply supported by the evidence, and therefore, we conclude that the trial court did not err by declaring the parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b).

## II.
### MS. MADU'S POST-TRIAL MOTION

We turn now to the post-trial motion filed by Ms. Madu's present lawyer seeking to vacate the very same divorce that Ms. Madu and her former lawyer had agreed to less than two months earlier. The motion seeks relief on two grounds. First, Ms. Madu requests a new trial under Tenn. R. Civ. P. 59.02 based on "newly discovered" evidence of Mr. Madu's extramarital conduct. Second, Ms. Madu requests that the trial court alter or amend the judgment in accordance with Tenn. R. Civ. P. 59.04 because she and her divorce lawyer misjudged the impact that the divorce would have on her ability to remain in the United States. While both grounds of the motion address themselves to the trial court's discretion, *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Holmes v. Wilson*, 551 S.W.2d 682, 686 (Tenn. 1977); *Jarred v. Hendrix*, No. W1998-00550-COA-R3-CV, 1999 WL 1336084, at *6 (Tenn. Ct. App. Dec. 15, 1999) (No Tenn. R. App. P. 11 application filed), each of them require different modes of analysis to determine whether the trial court exercised its discretion properly.

## A.
### THE "NEWLY DISCOVERED" EVIDENCE OF MR. MADU'S MISCONDUCT

Ms. Madu's first ground for relief from the divorce decree is her discovery after the trial that Mr. Madu was having an extramarital affair. She substantiated her claim by filing with her motion the affidavit of her former lawyer stating that the lawyer had been "completely unaware" that Mr. Madu was having an extramarital affair and that it was the lawyer's "understanding" that Ms. Madu learned of the affair after the trial. The lawyer also stated that she would not have "encouraged" Ms. Madu to agree to the divorce had she possessed the information.

The purpose of a motion for a new trial is to prevent unnecessary appeals by providing trial courts with an opportunity to correct errors before a judgment becomes final. *Ricks v. State*, 882 S.W.2d 387, 393 (Tenn. Crim. App. 1994); *Saffles v. Harvey Motor Co.*, 780 S.W.2d 727, 728 (Tenn. Ct. App. 1989). These motions are appropriate in either jury or non-jury cases. *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977); *Hughes v. Cowan Stone Co.*, 766 S.W.2d 188, 192 (Tenn. Ct. App. 1988). Thus, even though motions for a new trial based on newly discovered evidence are normally associated with jury trials, they may be filed in non-jury proceedings as well. *See*, *e.g.*, *Seay v. City of Knoxville*, 654 S.W.2d 397 (Tenn. Ct. App. 1983) (reviewing motion for a new trial based upon newly discovered evidence following a bench trial).

Courts have become skeptical about motions for a new trial based on newly discovered evidence. *Brown v. University Nursing Home, Inc.*, 496 S.W.2d 503, 510 (Tenn. Ct. App. 1972). These motions are viewed with distrust because they provide a temptation to perjury to strengthen

-4-

the weak points in the case discovered during the progress of the trial. *Southwestern Transp. Co. v. Waters*, 168 Tenn. 596, 606, 79 S.W.2d 1028, 1032 (1935); *Ross v. State*, 130 Tenn. 387, 394, 170 S.W. 1026, 1028 (1914). Accordingly, the courts have employed a set of stringent requirements governing motions for a new trial based on newly discovered evidence. The moving party must satisfy the trial court that it did not know about the newly discovered evidence prior to or during the trial and that it could not have discovered the evidence through the exercise of reasonable diligence. *Leek v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App. 1994); *Seay v. City of Knoxville*, 654 S.W.2d at 399. The movant must also show that the new evidence is neither cumulative nor irrelevant and that the result of the case would have been different had the evidence been admitted. *Wright v. Quillen*, 909 S.W.2d 804, 810 (Tenn. Ct. App. 1995).

The parties are not required to present testimony or oral arguments with regard to motions for a new trial. *Jerkins v. McKinney*, 533 S.W.2d 275, 279 (Tenn. 1976). However, the use of affidavits is strongly encouraged for motions for a new trial based on newly discovered evidence. *Seay v. City of Knoxville*, 654 S.W.2d at 399-400. These affidavits should aid the moving party to meet its burden of persuasion by setting forth facts demonstrating due diligence and not merely stating a change in the circumstances or the general knowledge of a prospective witness. *Ross v. State*, 130 Tenn. at 392, 170 S.W. at 1027; *Evans v. Evans*, 558 S.W.2d 851, 853 (Tenn. Ct. App. 1977).

The affidavits offered by Ms. Madu to substantiate her request for a new trial do not meet these standards. First, her former divorce lawyer's affidavit does not explicitly state that Mr. Madu was, in fact, having an extramarital affair but merely reflects the lawyer's "understanding" that Ms. Madu had learned of Mr. Madu's alleged misconduct after the trial. Second, none of the affidavits are from new witnesses who will be able to provide admissible testimony regarding Mr. Madu's extramarital affair.[4] Third, the affidavits shed little light on whether Ms. Madu knew this information prior to the trial or whether it could have been discovered with due diligence during the pretrial discovery process. Fourth, the affidavits do not demonstrate that the trail court would not have declared the parties' divorced had this evidence been presented at the trial.[5] Accordingly, in light of Ms. Madu's less than convincing showing that she and her lawyer exercised due diligence prior to trial or that this evidence would have changed the outcome of the trial had it been admitted, we have determined that the trail court did not err by denying the motion for a new trial based on newly discovered evidence.

---

[4] The affidavit by Ms. Madu's former lawyer contains double hearsay at best. It purports to provide information the lawyer learned from Ms. Madu who, in turn, learned it from some other unidentified person.

[5] The affidavit states only that the attorney representing Ms. Madu at trial would not have encouraged Ms. Madu to settle the marital dispute had she – the attorney – been aware of Mr. Madu's alleged extramarital affair.

**B.**
**AWARENESS OF THE LEGAL CONSEQUENCES OF THE DIVORCE DECREE**

Ms. Madu also asserts that she is entitled to a new trial because she and her former divorce lawyer did not fully appreciate the legal consequences that the divorce decree would have on her residency status. This request for relief cannot properly be construed as a motion for a new trial based on newly discovered evidence because it involves neither "newly discovered" information nor evidence. Viewed in its proper light, this portion of Ms. Madu's post-trial motion involves a mistake of law.

Tenn. R. App. P. 59 provides the courts with a vehicle for reviewing judgments entered as a result of mistake, inadvertence, or excusable neglect. *Campbell v. Archer*, 555 S.W.2d at 112; *Prince v. Cambell*, No. 01A01-9806-CV-00276, 1999 WL 51844, at *2 (Tenn. Ct. App. Feb. 5, 1999) (No Tenn. R. App. P. 11 application filed); *Thigpen v. First City Bank*, No. 01A01-9603-CV-00095, 1997 WL 351247, at *2 (Tenn. Ct. App. June 27, 1997) (No Tenn. R. App. P. 11 application filed); *Henson v. Diehl Mach., Inc.*, 674 S.W.2d 307, 310 (Tenn. Ct. App. 1984). Accordingly, we construe this motion as a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment on the basis of mistake or excusable neglect and will review it using standards similar to those used to review Tenn. R. Civ. P. 60.02(1) motions on similar grounds.[6]

Clients in civil proceedings cannot easily avoid the consequences of the actions of their voluntarily chosen attorneys. *Link v. Wabash R.R.*, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390 (1962); *Mansfield v. Mansfield*, No. 01A01-9412-CH-00058, 1995 WL 643329, at *6 (Tenn. Ct. App. Nov. 3, 1995) (No Tenn. R. App. P. 11 application filed). Lawyers are the agents of their clients. *Simmons v. O'Charley's, Inc.*, 914 S.W.2d 895, 902 (Tenn. Ct. App. 1995); *Creative Rests., Inc. v. City of Memphis*, 795 S.W.2d 672, 679 (Tenn. Ct. App. 1990). Thus, except for circumstances not at issue here,[7] a lawyer's tactical decisions during the course of litigation are attributable to and binding on his or her client. *Turley v. Cooley*, 3 Tenn. Cas. (Shannon) 68, 71 (1879); *Thigpen v. First City Bank*, 1997 WL 351247, at *4; *Hart v. First Nat'l Bank*, 690 S.W.2d 536, 539 (Tenn. Ct. App. 1985); *Prater v. Louisville & Nashville R.R.*, 62 Tenn. App. 318, 330, 462 S.W.2d 514, 519 (1970).

Parties seeking to avoid a judgment because of mistake must demonstrate why the mistake should be excused. Neither ignorance of the rules nor ignorance of the law provides sufficient

---

[6]The only distinction between a Tenn. R. Civ. P. 59 motion seeking a new trial based on mistake, inadvertence, or excusable neglect and a Tenn. R. Civ. P. 60.02(1) motion is that the Tenn. R. Civ. P. 59 motion seeks relief from a judgment that has not yet become final, while the Tenn. R. Civ. P. 60.02(1) motion seeks relief from a judgment that has become final. *Campbell v. Archer*, 555 S.W.2d at 112.

[7]Clients are not bound by their lawyer's agreement to dismiss their suit with prejudice unless they have authorized or acquiesced in the dismissal. *Absar v. Jones*, 833 S.W.2d 86, 89 (Tenn. Ct. App. 1992).

justification. *Algee v. State Farm Gen. Ins. Co.*, 890 S.W.2d 445, 447 (Tenn. Ct. App. 1994); *Kilby v. Sivley*, 745 S.W.2d 284, 287 (Tenn. Ct. App. 1987). Accordingly, a mistake of law, unlike a mistake of fact, will not provide a basis for obtaining relief from a judgment. *Haas v. Haas*, No. 02A01-9709-CV-00241, 1998 WL 599529, at \*3 (Tenn. Ct. App. Sept. 11, 1998) (No Tenn. R. App. P. 11 application filed); *Metropolitan Dev. & Hous. Agency v. Hill*, 518 S.W.2d 754, 768 (Tenn. Ct. App. 1974). A mistake of law occurs when a party is aware of the operative facts but is unaware of the legal consequences arising from these facts. *State ex rel. McCormack v. American Bldg. & Loan Ass'n*, 177 Tenn. 385, 428, 150 S.W.2d 1048, 1065 (1941). A mistake of fact occurs when a party is unaware of the operative facts. *Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn. Ct. App. 1998).

Ms. Madu was being represented by two lawyers at the time of the divorce proceeding. One lawyer was representing her in the divorce proceeding, while the other lawyer was assisting her in her dealings with the INS. The record sheds little light regarding the extent to which these lawyers were coordinating their efforts. However, despite the claims in one of the affidavits supporting Ms. Madu's post-trial motion,[8] the pleadings and the transcript of the divorce hearing demonstrate that both Ms. Madu and the lawyer representing her in the divorce proceeding understood that the outcome of the proceeding could significantly influence Ms. Madu's residency status. Despite this knowledge, the lawyer encouraged Ms. Madu to accept a settlement that included declaring the parties divorced under Tenn. Code Ann. § 36-4-129(b), and Ms. Madu agreed to this recommendation.

Both Ms. Madu and her lawyer participated in the agreement to settle the divorce proceedings by the entry of an order declaring the parties divorced under Tenn. Code Ann. § 36-4-129(b). Ms. Madu now argues that she did not fully understand the effect that the divorce decree would have on her ability to remain in the United States. Even if we accept this assertion as true, it is a classic mistake of law and, as such, cannot provide relief from the judgment on the ground of mistake.

Ms. Madu also argues that she is entitled to relief from the divorce decree on the ground of excusable neglect. As best we can determine, the excusable neglect to which Ms. Madu refers involves her lawyer's failure to discuss the effects of the proposed divorce on Ms. Madu's residence status with her immigration lawyer prior to recommending the settlement of the divorce case. We have held, however, that a lawyer's oversight or negligence, without more, does not amount to excusable neglect. *State ex. rel. Jones v. Looper*, No. M1999-00662-COA-R3-CV, 2000 WL 354404, at \*13 (Tenn. Ct. App. April 7, 2000) (perm. app. filed June 5, 2000); *Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986).

In her affidavit supporting Ms. Madu's post-trial motion, the lawyer representing Ms. Madu in the divorce proceeding attempts to rationalize her decision to agree that the parties could be declared divorced by pointing out that she had unsuccessfully attempted to telephone Ms. Madu's

---

[8]The lawyer representing Ms. Madu at trial states in her affidavit that "I had no reason to believe that the mere fact of the finality of the divorce would in any way impede Mrs. Madu's rights and interests in the pursuit of permanent residence status in this county [sic]."

-7-

immigration attorney "[o]n at least three occasions prior to the final hearing." The conclusion we are expected to draw from this assertion is that the lawyer would not have recommended that Ms. Madu agree to the divorce had she learned from Ms. Madu's immigration lawyer the full effects that the divorce decree would have. We have already pointed out, however, that both Ms. Madu and her former divorce lawyer knew that a divorce could impede her ability to remain in the United States. It was for that reason that Ms. Madu and her former lawyer were pursuing a legal separation rather than a divorce. Despite this knowledge, Ms. Madu and her former lawyer agreed to the divorce even though they had not been able to consult her immigration lawyer. This tactical decision, despite its unfortunate collateral consequences, does not justify relief from the divorce decree on the ground of excusable neglect.

## III.

We affirm the divorce decree and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Dolly Juliet Rakiro Madu and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE